**Wilbur HOWARD, Sr., Plaintiff,**

v.

**SUMMIT COUNTY WELFARE DEPARTMENT, Defendant.**

Civ. A. No. C81–288A.

United States District Court, N. D. Ohio, E. D.

Nov. 4, 1981.

Donald L. Walker, Eugene C. Edwards, Akron, Ohio, for plaintiff.

Timothy Hartman, Asst. Prosecutor, Akron, Ohio, for defendant.

MEMORANDUM OPINION AND ORDER

CONTIE, District Judge.

This action was instituted by plaintiff, Wilbur D. Howard, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. §§ 1981, 1983 and the fourteenth amendment to the United States Constitution. The plaintiff alleges that the Summit County Welfare Department unlawfully and intentionally discriminated against him on the basis that he is a member of the black race.

The plaintiff alleges that he is a black citizen of the United States presently employed by the defendant Summit County Welfare Department (SCWD). The plaintiff further alleges that he applied for and was denied a transfer-promotion to the professional position of Affirmative Action Planner at the SCWD. The plaintiff finally alleges that he was denied the position of Affirmative Action Planner (AAP) on the basis of his race and that this constituted discriminatory disparate and unequal treatment.

This Court possesses jurisdiction over this matter under the provisions of 28 U.S.C. §§ 1331, 1343, 2201 and 2202. And, having received testimony and documentary evidence, the following shall constitute this Court's findings of facts and conclusions of law as required by Federal Rules of Civil Procedure, rule 52(a).[1]

### A. Findings of Facts

In May of 1978, the Summit County Welfare Department sent a notice to the Ohio Department of Administrative Services (DAS) that it was adding the position of Affirmative Action Planner to its table of organization. The notice was sent for the purpose of having such position classified by the Ohio Department of Administrative Services (DAS) into a particular pay range.

---

1. During the course of trial, the defendant at the proper time moved for dismissal of the action on the basis that upon the facts and the law, the plaintiff has shown no right to relief. *Fed.R.Civ.P.* 41(b). The Court deferred ruling on the motion until it considered all of the evidence. Inasmuch as this Court now decides the case in this memorandum opinion and order the Court hereby denies the defendant's motion to dismiss.

County welfare departments are required by the Department of Administrative Services to submit tables of organization charts. The charts are then used by the Department of Administrative Services for the purpose of effectively evaluating the responsibility of each position so that the new position can be correctly classified. All civil service positions, under Ohio law, must be classified by the Department of Administrative Services. Once classified, the county welfare departments are able to assess the economic feasibility of the new position in light of its classified pay range.

The DAS, however, is in no way responsible for the filling of vacant positions. The complete authority and responsibility for the filling or deletion of positions remains at all times within the authority of the county welfare departments. The fact that a position appears vacant on the table of organization has no relationship to the issue of whether or not the position is being offered to qualified applicants. Further, it is within the authority of the welfare departments to delete the vacant positions at any time from the table of organization although any such deletion must be communicated to the DAS.

The Department of Administrative Services classified the Affirmative Action Planner position as a professional position within pay range 28 with a starting pay of $5.44 per hour. And, with anniversary pay raises the position would pay $5.76 per hour in the second year, $5.99 per hour in the third year, and $6.30 per hour in the fourth year.

The uncontroverted testimony at trial established that the position of Affirmative Action Planner remained vacant until it was deleted from the SCWD table of organization in July of 1979.[2] Additionally, the testimony established that before a vacancy is filled it must be posted for at least five work days and prior to making a selection, all candidates must be interviewed. The position of Affirmative Action Planner was never posted, never offered, and never filled by any person. Finally, the evidence established that the DAS, as a matter of policy beginning March 5, 1979, would automatically delete from the table of organization all positions vacant for six months or longer in December of each year. Consequently, had the SCWD not deleted the position of Affirmative Action Planner in July of 1979, the position would have been removed from the Table of Organization automatically by the DAS.[3]

During the period that the position of Affirmative Action Planner was vacant and unposted the plaintiff approached the director of the SCWD seeking appointment to the vacant position. In June of 1979 Mr. Howard submitted an affirmative action plan to the director and orally applied for the position. The plaintiff testified that except for that one oral request to the SCWD director he did not further pursue the matter until after its deletion from the table of organization.[4]

The plaintiff, Mr. Howard, testified that he was qualified for the position based on three factors. First, the plaintiff received a correspondence degree in 1975, a bachelor of science degree in social welfare, from the University of OTAY–MESA in San Diego, California. Second, the plaintiff asserted the quality of his affirmative action plan which was a compilation of plans from various federal sources. And, third, the plaintiff presented a recommendation at trial by

---

2. The testimony establishes that the SCWD deleted the position from its table of organization in July of 1979. However, the SCWD did not inform the DAS and the DAS did not acknowledge the deletion until August of 1979.

3. The testimony of Nancy Wilson, the Personnel Director of SCWD, established that at the time that the Affirmative Action Planner position was deleted from the Table of Organization, approximately 35–40 other vacant positions were also deleted.

4. The plaintiff testified that he did not fill out a written application for the position requested. Although there was some evidence that one employee was rehired into the SCWD without a written application, the clear policy of the SCWD is that all applications for new positions must be submitted in writing. Further, the evidence established that before applications are accepted, a new position must be posted soliciting applications.

the Equal Employment Officer of the University of Akron.

Finally, the testimony at trial established that at the time that Mr. Howard applied for the position Affirmative Action Planner he was employed in the professional position of Management Analyst II with a pay scale range of 30. The first year salary in this position was $6.61 per hour with an increase in the second year to $7.14 per hour and to $7.49 per hour in the third year and $7.86 per hour in the fourth year. Despite the plaintiff's insistence that he would have been entitled to an increase in pay, the evidence established that the plaintiff would have realized a decrease in his hourly and annual salary had he received the position Affirmative Action Planner. The position that Mr. Howard is presently employed has a pay range higher than that to which position Affirmative Action Planner was classified so that Mr. Howard could not even have made a lateral move in order to receive the pay that he is presently receiving.

The plaintiff herein contends that the position of Affirmative Action Planner was deleted from the table of organization after the plaintiff applied for the position on the basis of his race. The plaintiff further alleges that the SCWD was under an obligation to hire an Affirmative Action Planner pursuant to state regulations promulgated by the Department of Administrative Services. Finally, the plaintiff contends that the defendant denied him this employment opportunity due to disparate treatment by the defendant because of his race. The plaintiff seeks, therefore, appointment to the position of Affirmative Action Planner for the SCWD with all accruable promotions, benefits and entitlements, payment of all lost wages, One Hundred Thousand Dollars ($100,000) actual damages for mental distress, Five Hundred Thousand Dollars ($500,000) punitive damages, and reasonable attorney's fees.

### B. Title VII of the Civil Rights Act of 1964

There are two types of cases under Title VII of the Civil Rights Act of 1964: cases charging disparate treatment and those charging disparate impact. *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335–36 n.15, 97 S.Ct. 1843, 1854–54 n.15, 52 L.Ed.2d 396 (1977). Under the charge of disparate impact, a plaintiff asserts that the defendant's employment practices are facially neutral but in fact treat certain groups of persons less favorably than others without a business necessity justification. *Id.* at 336 n.15, 97 S.Ct. 1855 n.15. In asserting a disparate treatment charge, a plaintiff asserts that the employer-defendant has treated him less favorably than others because of his race, color, religion, sex or national origin. *Id.* at 335 n.15, 97 S.Ct. 1854 n.15.

The plaintiff's action charges that the SCWD treated him less favorably than other employees simply because of his race—i. e. disparate treatment. Specifically, the plaintiff alleges that the removal of the position Affirmative Action Planner from the SCWD table of organization constituted racial discrimination against him.

The disparate treatment theory under Title VII requires the plaintiff to carry the ultimate burden of persuasion that the defendant intentionally discriminated against him on the basis of his race. *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). However, proof of discriminatory motive can in some situations be inferred from the mere fact of differences in treatment. *See, e. g., Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265–266, 97 S.Ct. 555, 563–564, 50 L.Ed.2d 450 (1977); *International Bhd. of Teamsters v. United States*, 431 U.S. at 335 n.15, 97 S.Ct. 1854 n.15.

In a Title VII disparate treatment case, the Supreme Court has articulated the basic allocation of the burdens and order of presentation of proof as follows:

First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden

shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." (citation omitted). Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. (citation omitted.)

*Texas Dept. of Community Affairs v. Burdine,* 101 S.Ct. at 1093, *quoting from McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 804, 93 S.Ct. 1817, 1824, 1825, 36 L.Ed.2d 668 (1973).

### 1. Plaintiff's Prima Facie Case

To establish a prima facie case of racial discrimination the plaintiff must establish "(i) that he belongs to a racial minority, (ii) that he applied for and was qualified for a job for which the employer was seeking applicants, (iii) that, despite his qualifications, he was rejected, and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824.

In the present case there is no dispute that the plaintiff is a member of a racial minority. Also, the Court finds that, although the SCWD has a general policy that requires applications to be submitted in writing, it is compelled to hold that the plaintiff did apply for the position of Affirmative Action Planner. The plaintiff established that at least once the SCWD accepted an application orally. Absent evidence to the contrary, the Court must assume that oral applications, in some instances, were sufficient to notify and apply for a position with the SCWD. Thus, plaintiff's oral communication with the SCWD director was an oral application for the position Affirmative Action Planner.

Third, the Court finds that although the plaintiff's qualifications are not most impressive,[5] inasmuch as the defendant at no time challenged the plaintiff's qualification or presented evidence concerning the requirements of the position for which the plaintiff applied, the Court finds that Mr. Howard was qualified for the position.

The dispute in this case, however, concerns the elements of whether the employer was seeking applicants for the job which the plaintiff applied, whether the plaintiff was rejected, and whether the position remained open and defendant continued to seek applicants from persons of complainant's qualifications. There is no dispute that the SCWD was not seeking applicants for the position of Affirmative Action Planner. The position was never posted as open and was never offered to *any* person at any time. The testimony at trial established that the position was placed on the table of organization for the purpose of studying its feasibility. And, the SCWD determined that although such position would have been a 40 hour per week position only about ten to fifteen percent (10–15%) of the employee's time would be required to complete the duties of Affirmative Action Planner. The SCWD concluded, therefore, that such duties could be completed by the personnel department without creating an additional position.

Additionally, at the time that such position was being considered by the SCWD, the welfare department was part of the current county-wide affirmative action program and it was discussing the possibility of being part of a new county affirmative action plan. Thus, the possibility of continuing to be part of the county affirmative action plan as well as the study of need for the position of Affirmative Action Planner counseled the SCWD not to offer the position as a declared and posted position.

The plaintiff asserts, however, that although the SCWD was not accepting appli-

---

**5.** For example, the Court questioned the plaintiff in regard to his submitted affirmative action plan and it became quite clear that the plaintiff had merely copied affirmative action plans from various other sources. The plaintiff's plan was not at all edited or adopted to the needs or administrative heirarchy of the SCWD.

cations for the position Affirmative Action Planner, it nevertheless was under compulsion of state regulation to establish such a position. The plaintiff asserts that the Department of Administrative Services Regulations Chapter 123:1–49 et seq., of the Ohio Administrative Code are applicable. The specifically relevant regulations that the plaintiff asserts are applicable are:

1. 123:1–49–01 Equal Employment Opportunity Policy

The Department of State Personnel will assure equal opportunity in state service and universities to prohibit discrimination in state service and universities because of race, color, religion, sex, national origin, age or handicap, and to promote the full realization of equal opportunity in state service and universities through a continuing affirmative program in each state department, agency, commission and appointing authority (hereinafter referred to as "agency").

2. 123:1–49–03 Responsibilities of state agencies in regard to EEO

(A) Each state agency shall be primarily responsible for carrying out the requirements of these regulations and subsequent procedures. The agency shall furnish such information and assistance as may be required by the State Employees EEO Coordinator. . . .

(B) The head of each agency shall establish and promulgate a program to carry out the agency's responsibilities under these regulations. Each agency head shall also designate an agency Affirmative Action Executive who shall have sufficient knowledge and experience to handle the assignment.

3. 123:1–49–05 Characteristics of an affirmative action program

In addition to the Affirmative Action Plan required by 123:1–49–04 an agency shall also:

(A) . . .

(B) Appoint an Affirmative Action Executive. . .

The plaintiff has insisted upon the applicability of these administrative regulations to the SCWD without citing any authority or without any proof that the SCWD or the DAS has recognized at any time their applicability. The SCWD, however, maintains that such regulations expressly apply only to "state agencies" and inasmuch as the SCWD is an agency of Summit County and not a state agency these regulations are not applicable to it. The SCWD also asserts that even if such regulations were applicable to it, noncompliance is not evidence of intentional racial discrimination against the plaintiff.

■ Upon review of the regulations of the DAS concerning equal opportunity in state government, the Court agrees that the regulations expressly apply to state agencies. The Court also finds that the SCWD is an agency of Summit County and is not a "state agency" for purposes of these regulations. The Court concludes, therefore, that the regulations asserted by the plaintiff are not applicable to the SCWD.

County welfare departments are created and exercise and perform their functions under the control and direction of the board of county commissioners. *Ohio Rev.Code*, Section 329.04. Cooperation with state authorities in the administration of matters relating to public welfare occurs pursuant to agreement between the state welfare department and county board of commissioners. *Ohio Rev.Code*, Section 5101.02. Thus, the county welfare departments are created by the county's governing authority and they act under the authority of the county administration.

Additionally, all of the documents exchanged between the Department of Administrative Services and the SCWD identify the SCWD as a county agency as opposed to a state agency or department.[6] The Court concludes in addition to the fact that the SCWD did not seek applicants for

---

**6.** The Court also notes that Administrative regulations that the plaintiff contends are applicable to the SCWD were adopted in 1973. At no time since 1973, however, has the state DAS attempted to apply such regulations to the SCWD.

the position of Affirmative Action Planner, the defendant was not required by Ohio Administrative Code Regulations 123:1–49–01 et seq., to create a position of Affirmative Action Executive. Thus, no motive can be inferred from the fact that the defendants have not complied with such administrative regulations.

In regard to the issue of whether the plaintiff was rejected for the position despite his qualifications, the Court finds that inasmuch as the defendant abolished the vacant position that the plaintiff sought, such action could constitute rejection in some situations. Abolition constitutes rejection, however, only in cases where other applicants are sought and accepted either before or after the abolishment of the position. For example, in the case *Dumas v. Town of Mount Vernon, Alabama*, 612 F.2d 974 (5th Cir. 1980), the court held that an allegation asserting abolition of a position to avoid hiring a black person alleged an unlawful employment practice. The facts of the Dumas case were that 1) the plaintiff, Ms. Dumas, who was black, applied for a position with the town of Mt. Vernon, Alabama; 2) that after taking an exam, from which the town was to fill the vacancy, Ms. Dumas was ranked first; 3) that later the plaintiff learned that a white person ranked below her on the exam had been hired for the job; 4) that the plaintiff then filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC) and the white person who had been hired resigned; and 5) that the town, in considering Ms. Dumas' application as well as the white person's who resigned, decided not to fill the position at that time. Thus, the town of Mt. Vernon attempted to fill a vacant position and when it became clear that such position would be filled by a black, the position was abolished.

In the case at bar, the SCWD did not seek applicants and did not attempt to fill the vacant position. The Court concludes, therefore, that the abolition of the position Affirmative Action Planner without more did not constitute rejection of Mr. Howard's application. Inasmuch as the SCWD was under no compulsion to hire the plaintiff Mr. Howard for the vacant position as opposed to any other person there is no evidence that abolition of the position Affirmative Action Planner was intended to prevent Mr. Howard from obtaining that position.

Finally, the third element in dispute regarding the plaintiff's prima facie case is whether or not the position of Affirmative Action Planner remained open and the SCWD continued to seek applicants from persons of complainant's qualifications. Again, however, there is no dispute that the position did not remain open and that the defendant did not continue to seek applicants.

Based on analysis of the facts of this case, in light of the elements of the prima facie case set out in *McDonnell-Douglas*, the Court concludes that the plaintiff has failed to establish a prima facie case of intentional racial discrimination. There has been no disparate treatment between Mr. Howard and anyone else. The Court does not find that it is a violation of Title VII for an employer to choose not to fill a position that was never offered to anyone at any time where the employer did not seek applications for the position.

### 2. Defendant's Rebuttal

In the alternative and assuming arguendo that the plaintiff established a prima facie case of intentional racial discrimination, the defendant sufficiently rebutted the prima facie case. To rebut plaintiff's prima facie case, the defendant must produce sufficient evidence explaining its legitimate nondiscriminatory reasoning behind its employment action. *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094.

The SCWD explained first of all, that its decision to remove the position from the table of organization was not an abolition of a position but rather was a decision not to create a new position. The unrebutted evidence of the SCWD was that if such position was created only ten to

fifteen percent (10–15%) of a 40-hour work week would be required to complete the duties that would be assigned to the new position. The welfare department, therefore, decided to allow such functions to be continued to be performed by the personnel office. Second, the evidence established that there existed an affirmative action plan adopted by the SCWD as well as discussions at that time regarding the adoption of a new county affirmative action plan.[7] Third, the director of the SCWD as well as the department's director of personnel testified that there did not exist sufficient funds to create the new position in light of its feasibility in terms of hours per week required. Finally, there was uncontroverted evidence that at the time that the position of Affirmative Action Planner was removed from the table of organization the SCWD also removed some 35 to 40 other vacant positions.

The Court believes that this evidence sufficiently establishes the explanation of the SCWD that economic and administrative reasons rather than racial discrimination motivated it not to create the new position.

### 3. Plaintiff's Burden of Persuasion

The plaintiff must persuade the Court by a preponderance of the evidence that he has been made a victim of intentional racial discrimination. This can be accomplished by the establishment of a prima facie case and a demonstration that defendant's proffered reasons were pretextual rather than its reasoning for its employment decision. The Court has already found that the plaintiff has failed to establish a prima facie case of disparate racial treatment. The

court also finds that the plaintiff has not demonstrated that defendant's non-discriminatory reasons for its employment action were pretextual. The plaintiff offered no evidence that the defendant's reasons were not credible and he did not offer sufficient evidence that the defendant was most likely motivated by a discriminatory reason.[8] The Court, therefore, concludes that the plaintiff has failed to establish by a preponderance of the evidence that the defendant violated Title VII of the Civil Rights Act of 1969, as amended, 42 U.S.C. section 2000e et seq.

### C. Plaintiff's Claims Under 42 U.S.C. §§ 1981, 1983 and the Fourteenth Amendment of the United States Constitution

In addition to his Title VII claim, the plaintiff also has alleged that the defendant unlawfully discriminated against him on the basis of his race pursuant to 42 U.S.C. §§ 1981, 1983 and the fourteenth amendment. The plaintiff asserts that he is entitled to be free from racial discrimination in employment and employment opportunity under the terms of 42 U.S.C. §§ 1981, 1983 and the equal protection clause of the United States Constitution. The provisions of 42 U.S.C. § 1981 read as follows:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, pen-

---

7. The plaintiff presented evidence that the SCWD was not included in the currently existing county affirmative action plan except that the complaint procedures adopted therein are applicable. The county equal employment officer explained, however, that the reason for such exclusion was that the welfare department has a personnel department that monitors the affirmative action plan. Additionally, the Court notes that the existing affirmative action plan of Summit County has no requirement that participating departments should have an affirmative action planner.

8. The plaintiff offered some statistical evidence to prove that the defendant was motivated by a discriminatory intent, as plaintiff asserts, to prove his claim under 42 U.S.C. § 1981. The Court recognizes that such evidence is also relevant to the establishment of a Title VII prima facie case. As discussed below, however, the plaintiff's statistics do not establish a disparate impact or discriminatory intent. Thus, the Court finds the proffered statistics in no way establishes alone or in conjunction with other evidence plaintiff's prima facie case.

alties, taxes, licenses, and exactions of every kind, and to no other.

Under the provisions of this statute the plaintiff has asserted that he has not been given the same employment opportunities as white persons. The pertinent provision of 42 U.S.C. § 1983 reads as follows:

Every person, who under color of any statute, ordinance regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

Under this statute the plaintiff is alleging racial discrimination in violation of the equal protection clause of the United States Constitution, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e and 42 U.S.C. § 1981.

Like plaintiff's Title VII claim, to be successful under 42 U.S.C. §§ 1981, 1983 and the equal protection clause of the United States Constitution, the plaintiff must prove intentional racial discrimination. *Village of Arlington Hts. v. Metropolitan Housing Devel. Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450; *Long v. Ford Motor Co.*, 496 F.2d 500 (6th Cir. 1974).[9] The Court, however, has already found that the plaintiff has failed to establish a prima facie case of intentional racial discrimination under Title VII. Such finding also applies to the plaintiff's claims under 42 U.S.C. §§ 1981, 1983 and the fourteenth amendment's equal protection clause. *Long v. Ford Motor Co.*, 496 F.2d 500 (6th Cir. 1974).

The plaintiff has also asserted that based on his showing of gross statistical disparity

between (a) the number of black males in the administration level of the SCWD compared to whites and (b) the number of black males in the total labor force compared to the number of whites in such labor force, that intent to discriminate may be inferred. The Court agrees that statistics may be used to buttress a claim of intentional discrimination. *Hazelwood School Dist. v. United States*, 433 U.S. 299, 97 S.Ct. 730, 50 L.Ed.2d 747 (1977); *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

The specific statistics produced by the plaintiff were as follows:

1) between the period 1977–1981 no black males were hired into administrative positions at SCWD;

2) between the period 1977–1981 only 6 black males (including the plaintiff) were employed in professional positions compared to 50 white males; and

3) pursuant to the 1970 census figures for 1970 there were 24,532 black males in Summit County or 4.6% of the total population.

From these statistics the plaintiff asserts the Court can conclude that the SCWD intended to discriminate against the plaintiff on the basis of his race. In reviewing the plaintiff's statistics, however, the Court finds that no such conclusion is warranted.

First of all, the statistics that were offered by the plaintiff do not compare race alone. Rather, the plaintiff has also injected a sex factor without having alleged sex discrimination. Second, the plaintiff's statistics in no way take into account the promotion procedures that the SCWD must comply with pursuant to Ohio Revised Code, section 124.04. Absent a comparison between the pass/fail rates of actual applicants for jobs at any level, the

---

**9.** The plaintiff asserts in its post-trial brief that intentional discrimination need not be shown to prove its claim under 42 U.S.C. § 1983. The plaintiff alleges racial discrimination on the basis of his race and asserts that he has a right to equal employment opportunity. Such rights are granted to the plaintiff under Title VII, 42

U.S.C. § 1981 and the equal protection clause. All of these rights protect against intentional discrimination so that plaintiff can have a right to remedy under section 1983 for violation of these rights only by proving intentional discrimination.

bare statistics of end result have no value in terms of finding intentional discrimination concerning the promotion and transfer of employees. See *Schlei and Grossman, Employment Discrimination Law*, chapter 36 at 1161–76 (1976). The plaintiff has shown no disparity between blacks who have applied for particular positions at either the professional or administrative levels as compared to white applicants. Thus, no inference can be made that the SCWD intentionally discriminated against Mr. Howard without at least a showing of disparate impact in promotions and transfers of blacks as compared to whites. Finally, the end-result statistic establishing the fact that no black males are in administrative positions with the SCWD is mitigated by the facts that plaintiff presented no evidence concerning the number of potential blacks that applied for, were qualified for and were promoted into such positions (male or female) and by the fact that the position affirmative action planner was classified as a professional rather than administrative position.

The Court also finds that plaintiff's statistical evidence comparing the race percentage of the general population with the race percentage of the employer's work force is at best lacking sufficiency. The plaintiff presented no evidence concerning the work force at the SCWD. Instead, the plaintiff asks the Court to compare the percentage of black males employed at Summit County government agencies generally and the general black male population of the county.[10] Further, the defendant's exhibits concerning the racial makeup of the SCWD indicate that there is no dis-parity between the SCWD work force of blacks or black males and the general population of blacks in Summit County (using plaintiff's evidence of the general population of Summit County).

The Court concludes, therefore, that the plaintiff's statistics fail to in any way establish or buttress his claim of intentional discrimination. Further, the Court concludes that plaintiff has failed to establish his claim of intentional discrimination under 42 U.S.C. §§ 1981, 1983 and the fourteenth amendment.

Accordingly, the Court hereby finds that judgment should be entered in favor of the defendant SCWD and against the plaintiff in regard to plaintiff's action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000–e et seq., 42 U.S.C. §§ 1981, 1983 and the fourteenth amendment to the United States Constitution.

IT IS SO ORDERED.

---

10. Even accepting the plaintiff's statistics concerning the work force of black males in Summit County government, the percentage of black males who work for the Summit County government is 5% and the percentage of black males in the general population of Summit County pursuant to the 1970 census offered by the plaintiff is 4.6%.