Allene **FIELDS** and Earine Daniels,
Plaintiffs–Appellants,

v.

**HALLSVILLE INDEPENDENT SCHOOL DISTRICT, et al.,**
Defendants–Appellees.

No. 89–2664.

United States Court of Appeals,
Fifth Circuit.

July 3, 1990.
Rehearing Denied July 30, 1990.

Larry R. Daves, Daves, Hahn & Levy, San Antonio, Tex., for plaintiffs-appellants.

John F. Bufe, Potter, Guinn, Minton, Roberts & Davis, Tyler, Tex., for Hallsville Independent School Dist., et al.

Kevin O'Hanlon, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for State of Tex.

Before POLITZ, KING and WILLIAMS, Circuit Judges.

PER CURIAM:

Plaintiffs Allene Fields and Earine Daniels (collectively, Teachers) appeal from the district court's grant of summary judgment to all defendants in this discrimination action. We conclude that Teachers failed to put forth evidence creating a genuine issue that the State of Texas or certain officials or agencies of the State were their employers. We also hold that Teachers failed to present evidence that they applied for subsequent vacancies at Hallsville Independent School District after being fired.

I.

After Teachers failed to pass a compulsory certification examination—the Texas Examination for Current Administrators and Teachers (TECAT)—they were terminated from their teaching positions at Hallsville Independent School District (HISD). Teachers obtained right to sue letters from the Equal Employment Opportunity Commission (EEOC). Teachers claimed that the Texas Education Agency, Texas Commissioner of Education, Texas State Board of Education and State of Texas (collectively, the State), chose a cut-off score on the TECAT that worked to discriminate against them based on age and/or race.[1] Teachers also claimed that HISD discriminated against them, subsequent to their termination, by failing or refusing to consider them for non-certified positions that became available the following school year.

Teachers were special education instructors for HISD. Plaintiff, Allene Fields, a 61 year-old black woman, had been employed by HISD for 14 years, while plaintiff, Earine Daniels, a 59 year-old black woman, had worked at HISD for 11 years. Both obtained contracts for the 1986–87 school year conditioned upon passage of the TECAT examination. Teachers each took the TECAT twice but failed on each attempt.

---

1. Teachers' claims are based on Title VII, the Age Discrimination in Employment Act (ADEA) and the Employee Retirement Income Security Act (ERISA).

After receiving their results, Teachers requested the HISD Board of Trustees (Board) to waive the TECAT requirement so that they could retain their positions. On August 28, 1986, Teachers, along with two other persons failing the exam, appeared before the Board with their union representative. The union representative, on behalf of Teachers, requested a waiver or, in the alternative, asked that they be considered for non-certified positions (positions not requiring passage of the TECAT). The Board denied Teachers' waiver request but ordered the Superintendent to write Teachers "advising them that upon their successful passage of the TECAT examination, and if they so desire, they will be considered for future employment on an equal basis with other applicants in their field of preparation and experience." Teachers did not subsequently take or pass the TECAT. Nor did Teachers ever fill out a written application or otherwise express a desire to be considered for arising vacancies. Over one year after Teachers meeting with the Board, the first non-certified teachers aide positions became available. These positions were filled by other persons.

HISD and the State defendants each moved for summary judgment. The district court granted these motions finding, *inter alia*, that the State was not Teachers' employer and that Teachers had not applied for subsequent vacancies at HISD.

## II.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law. "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d

202 (1986). This requires that a plaintiff "make a showing sufficient to establish the existence of an[y] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The standard for reviewing a summary judgment on appeal is the same as that applied by the district court. *Reid v. State Farm Mut. Auto Ins.*, 784 F.2d 577, 578 (5th Cir.1986).

## III.

Teachers argue that the district court should not have granted summary judgment to the State defendants because, contrary to the district court's conclusion, Teachers were employees of the State. Teachers claim that an employment relationship between themselves and the State defendants exists under our circuit's hybrid economic realities/common law control test.[2] The *only* evidence presented by Teachers suggesting control is the Texas State Board of Education's administration of the TECAT exam and its ability to decertify teachers who fail the exam.[3]

■ In *Mares v. Marsh*, we adopted the hybrid economic realities/common law control test for determining the existence of an employment relationship. 777 F.2d 1066 (5th Cir.1985). This test was first announced in *Spirides v. Reinhardt*, 613 F.2d 826 (D.C.Cir.1979). Under our test, the right to control an employee's conduct is the "most important factor." *Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1160 (5th Cir.1986). As *Spirides* explains, "[i]f an employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist." 613 F.2d at 831–32. A number

---

**2.** Teachers do not argue that HISD and the State should be considered a single employer under either a joint employer or instrumentality theory. *See EEOC v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 571–73 (6th Cir.1984). We therefore do not address this issue.

**3.** In a footnote in Teachers' brief on appeal, they present evidence regarding state funding of facilities, payment of salaries and selection of textbooks. As this evidence was not before the district court, it is not part of the summary judgment record on appeal.

of additional factors beyond the control element may also be considered when assessing the "economic reality" of the supposed employment relationship.[4] *Id.* at 832.

The *Mares* case presents an instructive application of our circuit's test. Mary M. Mares (Mares) was a grocery bagger at the main commissary at Fort Bliss, Texas, who claimed she was an employee of the United States Army (Army) for purposes of Title VII. Finding that the Army did not control Mares and that the economic realities of her relationship with the Army did not suggest an employer/employee tie, the district court granted summary judgment to the Army. 777 F.2d at 1067. We affirmed. With regard to control, we noted that although the Army reserved the right to veto the selection of employees, issued regulations affecting dress and conduct, and imposed the Army's equal opportunity policies; the Army did not hire, fire, supervise, or set schedules for the bagger group. *Id.* at 1068. Thus, we concluded the "absence of control," along with the lack of economic ties between the baggers and the Army,[5] warranted the district court's conclusion that Mares had failed to put forth evidence creating a genuine issue as to the existence of an employment relationship with the Army. *Id.* at 1068–69.

Similarly, Teachers have not put forth sufficient evidence of an employment relationship with the State to create a gen-uine issue of material fact. The only evidence Teachers give with respect to the control aspect of the Fifth Circuit test is the State's administration of the TECAT exam. There is no evidence in the record that the State played any role in the general hiring or firing of teachers.[6] Nor is there evidence in the record that the State was involved in the daily supervision of Teachers. The State's role in the administration of the TECAT is wholly insufficient, standing alone, to create an inference of control under this circuit's test. Indeed, the State's role with respect to the TECAT is analogous to that of state bar administrators and other state licensing or certification agencies previously held not to be the employers of unsuccessful test takers under Title VII (or the ADEA). *See, e.g., Tyler v. Vickery,* 517 F.2d 1089, 1096 (5th Cir.1975), *cert. denied,* 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976); *Woodward v. Virginia Board of Bar Examiners,* 598 F.2d 1345 (4th Cir.1979); *see also George v. New Jersey Bd. of Veterinary Medical Examiners,* 794 F.2d 113, 114 (3d Cir.1986); *Haddock v. Board of Dental Examiners,* 777 F.2d 462 (9th Cir.1985); 1 A. Larson & L. Larson, *Employment Discrimination* § 5.24 (1990). Because the evidence before the district court suggested no more than a licensing relationship between the State and Teachers, we conclude that the district court properly granted summary judgment to the State.[7]

**4.** The factors listed by the *Spirides* court include:

(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; *i.e.,* by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

613 F.2d 826, 832 (D.C.Cir.1979).

**5.** The baggers received no wages from any source since their compensation came from tips. The Army also did not give baggers medical leave, insurance or retirement benefits.

**6.** The record indicates that HISD was responsible for hiring, firing and transfers. HISD was also listed as employer on application and personnel forms.

**7.** The district court granted summary judgment on Teachers' ADEA and ERISA claims on the basis that the State was not Teachers' employer. *See* 29 U.S.C. §§ 630 & 1002. It granted summary judgment to the State on Teachers' Title VII claims on a separate ground. However, since the definitions of "employer" and "employee" under both the ADEA and Title VII are identical for our purposes, we conclude that the

## IV.

Teachers also contend that the district court erred in granting summary judgment to HISD. The district court held, *inter alia*, that Teachers' verbal expression of interest in non-certified positions at an HISD Board meeting did not create a genuine issue that Teachers *applied* for vacancies occurring over one year subsequent to the meeting. Teachers contend however that their verbal expressions of interest in non-certified positions gave rise to a genuine issue that they submitted employment applications.

Teachers had previously obtained contracts for the 1986–87 school year. Their contracts stated however that Teachers must pass the TECAT or obtain a waiver from the Texas Commissioner of Education before the beginning of the 1986–87 school year. Teachers failed the TECAT twice in 1986. On June 30, 1986, Teachers, along with two other employees failing the TE-CAT, requested waivers. The Board considered Teachers' waiver requests on August 28, 1986. Teachers, along with their union representative, attended the August 28 meeting. According to Teachers, the union representative, Vance Rogers, requested that Teachers be given a waiver or, in the alternative, that Teachers be considered for non-certified positions for which they were qualified. Teachers' waiver requests were denied. The Board then instructed Superintendent W.C. Wooldridge (Wooldridge) to proceed with the termination of Teachers. The Board also instructed Wooldridge to inform Teachers, and the two others failing the exam, "that upon their successful passage of the TE-CAT examination, and if they desire, they will be considered for future employment in the HISD on an equal basis with other applicants when vacancies occur in their field of preparation and experience."[8] Wooldridge sent letters to Teachers informing them of the Board's decision. At no time subsequent to the August 28 meeting did Teachers submit any written applica-

tions or otherwise express any desire to be considered for any openings arising.

No non-certified positions became available during the 1986 calendar year. The first teachers aide positions to come available occurred on September 10, 1987 (over one year after Teachers' meeting with the Board). Each of the persons hired for non-certified positions for the 1987 and 1988 school years submitted written applications.

In *McDonnell Douglas Corp. v. Green*, the Court set out four elements that a plaintiff must initially prove in a Title VII case. 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *see also Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). One of these requirements is that a plaintiff apply for a position for which she is qualified. *Id.* An oral application may be sufficient. *Howard v. Summit County Welfare Dept.*, 525 F.Supp. 1084, 1089 (N.D.Ohio 1981) (oral application sufficient despite general policy requiring written applications where one oral application had been previously accepted); *but see Wright v. Stone Container Corp.*, 524 F.2d 1058, 1063 (8th Cir. 1975) (oral application held insufficient). While a vacancy need not exist on the precise day of application, an application will·only be "treated as viable for a reasonable period of time." *McLean v. Phillips–Ramsey, Inc.*, 624 F.2d 70, 72 (9th Cir.1980) (written application one month before vacancy sufficient where applicant had mailed follow-up letter); *see also Phillips v. Joint Legislative Committee on Performance and Expenditure Review*, 637 F.2d 1014, 1030 (5th Cir.1981), *cert. denied*, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 483 (1982) (although exact date vacancy occurred was unclear, district court erred in requiring that vacancy "exist on the precise day of application"); *Harrell v. Northern Elec. Co.*, 672 F.2d 444, 449 (5th Cir.), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 449, 74 L.Ed.2d 603 (1982) (plaintiff submitted written application in August 1974, was told

---

State and Teachers did not have an employment relationship under either statute. *See* 42 U.S.C. § 2000e.

8. The Board issued an order to this effect.

she would be considered for a clerical assignment when one became available, interviewed for a position in October 1974 but was turned down—held, plaintiff "applied for" October opening). The longer the period of time between an application and subsequent vacancy, the greater the need to "follow-up" an application. *See Mc-Lean,* 624 F.2d at 72. The duty to follow-up should be greater where an applicant has only made an oral inquiry. *See Farmer v. Washington Fed. Sav. & Loan Ass'n,* 488 F.Supp. 55, 57–58 (N.D.Miss.1979) (oral application plus three follow-up calls held insufficient under circumstances).

We believe that the district court correctly concluded that Teachers' oral expression of interest, without any follow-up inquiry, was insufficient as a matter of law. Teachers' oral inquiry to the Board contravened HISD's typical written application method. Moreover, the Board's resolution acknowledging Teachers' interest in future positions was conditional. The order of the Board stated that Teachers would be considered for future employment "upon passage of the TECAT examination and if they desire...." Even if, as Teachers contend, they orally sought *non-certified* positions, the Board's resolution required them to follow up on their request by expressing their "desire" for arising vacancies. Yet, in the months and years that followed, Teachers never indicated their desire to be considered for future vacancies in subsequent school years. In the two school years following Teachers' meeting with the Board, Teachers did not submit written applications, make follow-up phone calls or otherwise express their interest. Under these uncontested facts, we cannot say that Teachers applied for vacancies within the meaning of *McDonnell Douglas.*

### V.

Having reviewed Teachers' claims of error and found none compelling, we affirm the district court.

AFFIRMED.