Royce I. EHRET, Jr.

v.

The STATE OF LOUISIANA, et al.

Civ. A. No. 91–1416.

United States District Court, E.D. Louisiana.

March 4, 1992.

Gilbert R. Buras, Jr., Robein, Urann & Lurye, Metairie, LA, for plaintiff, Royce I. Ehret, Jr.

Michael R. Delesdernier, Sidney Donecio Torres, III, Law Offices of Sidney D. Torres, III, Chalmette, LA, Robert A. Barnett, Guste, Barnett & Shushan, and William Joseph Guste, Jr., New Orleans, LA, for defendant, State of La.

David L. McComb and Robert B. Landry, III, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, LA, for defendant, Crescent River Port Pilots Ass'n.

### ORDER AND REASONS

MENTZ, District Judge.

Before the Court are (1) the defendant, Crescent River Port Pilots Association's Motion for Summary Judgment and (2) the defendant River Port Pilot Commissioners' Motion for Summary Judgment. Because the plaintiff's allegations against each defendant involve similar issues,[1] the Court shall treat the motions together. After reviewing the motions, memoranda of counsel, the record, and the law, the Court grants both motions.

The plaintiff has sued the state of Louisiana, through the Board of River Port Pilot

---

1. The plaintiff alleges that the two defendants constitute a "single employer."

Commissioners for the Port of Orleans (hereinafter "the Board"), and the Crescent River Port Pilots Association (hereinafter "the Association") alleging violations of the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Louisiana Age Discrimination in Employment Act ("LADEA"), LSA R.S. 23:971 et seq.

## THE BOARD

The Board consists of three commissioned river port pilots, appointed by the governor. LSA R.S. 34:991(A). The Board is empowered to formulate rules and regulations establishing the qualifications of river port pilots, to approve apprenticeship programs, and to administer the evaluation and examination of river port pilots. LSA R.S. 34:991(B). The Board has approved the apprenticeship program operated by the Association.

## THE ASSOCIATION

Louisiana law provides that "river port pilots may form themselves into an association as to them may seem fit, not in conflict with law, or with the rules and regulations of the river pilot commissioners." LSA R.S. 34:995. The Association is such a voluntary association of river pilots which provides organizational and billing services for its members. The Association maintains a central office in Belle Chasse, Louisiana, where it receives requests for pilotage. The Association collects the pilots' fees, pays general overhead expenses from the receipts, and then remits the remaining receipts to the individual member pilots. The Association does not deduct withholding tax or FICA from monies distributed to pilot members; also, the Association does not accrue profits.

The Association operates a two-year apprenticeship program which is approved by the Board. At present, all commissioned river port pilots are also members of the Association.

---

**2.** The rules of both the Association and the Board prohibit an individual from standing for election to the apprenticeship program after his or her fortieth birthday. *See* Rules of the Board of River Port Pilot Commissioners for the Port of

## BECOMING A RIVER PILOT

Pursuant to LSA R.S. 34:996 river port pilots have the exclusive right to pilot vessels on the Mississippi River between New Orleans and Pilottown, Louisiana. No person may act as a river port pilot without a commission from the governor, after certification by the Board that the applicant has satisfied the requirements for appointment. LSA R.S. 34:992.

To become a river port pilot, an individual must first apply to the Board for certification to stand for election to the Association's apprenticeship program. The Board investigates the applicant's background and determines whether the applicant should be certified. Association members vote to determine which Board-certified applicants shall be elected to participate in the apprenticeship program. After completing the two-year apprenticeship program, candidates may be commissioned, or licensed, by the governor as river port pilots.

River port pilots are heavily regulated under state law. For example, the amount of fees pilots may charge is set by statute. *See* LSA R.S. 34:997, 34:1121–22. In addition, state law provides that a pilot may be subject to discipline who "has failed to timely offer pilot services to a vessel without just cause or refuses to perform pilot services without just cause." LSA R.S. 34:1001(A)(3).

## THE PLAINTIFF'S CLAIM

The plaintiff applied and was certified by the Board for election to the Association's apprentice program in 1981, however, the plaintiff was not elected at that time. In 1990, the plaintiff reapplied to the Board for certification. On September 17, 1990, the president of the Board wrote to the plaintiff informing him that he could not stand for election to the apprenticeship program because he had passed his fortieth birthday.[2] The plaintiff then filed a claim of age discrimination with the EEOC. The EEOC

---

New Orleans, § 4, La.Reg., Vol. 16, No. 5 at 417 (1990) ("The petitioner must not have reached his fortieth birthday prior to the first day of balloting on apprentices by the river port pilots").

dismissed the charge based upon its opinion that it lacked jurisdiction because no employer-employee relationship existed between the plaintiff and either the Board or the Association. The plaintiff now brings this claim alleging that the Board and the Association have violated the ADEA and the LADEA.

## ANALYSIS

The ADEA provides:

It shall be unlawful for an employer to fail or refuse to hire or to discharge an individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a)(1). The ADEA also proscribes discrimination in employment by employment agencies and labor organizations. 29 U.S.C. § 623(b) & (c).[3] The threshold issue to be determined in this matter is whether the Board and/or the Association is an "employer" for purposes of the ADEA or the LADEA.[4] An "employer" is defined by the ADEA as "a person engaged in an industry affecting commerce who has twenty or more employees ... The term also means (1) any agent of such a person, and (2) a state or political subdivision of a State ...". 29 U.S.C. § 630(b).

The terms "employer" and "employee" under both the ADEA and Title VII (42 U.S.C. § 2000e et seq.) have been treated as identical. Fields v. Hallsville Indep. School Dist., 906 F.2d 1017, 1020 n. 7 (5th Cir.1990), cert. denied, 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991). Thus, cases interpreting the terms under both statutes may be considered in determining whether the Board and the Association are employers for the purposes of the ADEA.[5]

■ It is undisputed that neither the Board nor the Association actually hires river port pilots. Thus, in determining whether these entities are 'employers,' the court must apply a "hybrid test" which considers the 'economic realities' of the work relationship as an important factor in the calculus, but which focuses more on the employer's control over the worker's performance. Fields, 906 F.2d at 1019; Mares v. Marsh, 777 F.2d 1066, 1067–68 (5th Cir.1985); Spirides v. Reinhardt, 613 F.2d 826, 831 (D.C.Cir.1979).

■ In Broussard v. L.H. Bossier, Inc., 789 F.2d 1158 (5th Cir.1986), the court noted that the "right to control is the most important factor in determining employee status." Id. at 1160. Other relevant factors include:

(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; ■ whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e. by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays Social

---

3. Although plaintiff's complaint states that this claim is brought against the Association and the Board effectively as a single employer, (see Plaintiff's Complaint, ¶ 15), in opposition to these motions the plaintiff asserts that the Association may be an "employment agency" within the meaning of the ADEA. This allegation will be addressed infra.

4. The LADEA is patterned after the ADEA, and has been interpreted similarly. See Deloach v. Delchamps, Inc., 897 F.2d 815, 818 (5th Cir. 1990). Thus, if plaintiff's claim fails under the ADEA, it also will fail under the LADEA.

5. The Court finds no merit in the plaintiff's argument that the specific reference to the state or its subdivisions as an "employer" in 29 U.S.C. § 630(b)(2) makes the definition of employer under the ADEA broader than that under Title VII. Although Title VII used to exempt state governments and subdivisions, this exemption was deleted in 1972. Thus, Title VII also applies to the states and their subdivisions in their capacity as employers. See Haddock v. Board of Dental Examiners of California, 777 F.2d 462 (9th Cir. 1985).

Security taxes; and (11) the intention of the parties.

*Id.*

### THE ASSOCIATION IS NOT AN "EMPLOYER"

■ The Association lacks control over the river pilots, and the other relevant criteria militate in favor of finding that the Association is not an employer of river pilots.

The Court finds persuasive, *McKeithen v. The SS FROSTA,* 441 F.Supp. 1213 (E.D.La. 1977), a tort case, wherein pilot members of the New Orleans and Baton Rouge Steamship Pilots Association [6] were deemed independent contractors, not employees, of the Steamship Pilots Association. The court in *McKeithen* found that the Steamship Pilots Association was akin to other professional organizations such as a state bar association, noting:

> The pilots association performs valuable economic services for its members that the other associations mentioned apparently do not. The [pilots] association assigns pilots to clients, and collects and distributes their fees. However, these characteristics do not appear to make the pilots association unique and thus distinctive as compared to other professional organizations....
>
> We are not concerned with an association of professionals that reaps financial benefits from its members' business activities so as to warrant imposing responsibility for the harms that result from those activities. Although membership in the [pilots] association may prove profitable for a member, as might membership in other esteemed societies, this benefit does not inure to the association. The primary purposes of the association are to provide organizational and billing services for its members. These services, and those provided by other associations analogous to the pilot association, are intended to benefit the profession and therefore the public at large.

441 F.Supp. at 1217. Of importance in determining that the pilots association was not

vicariously liable as an employer was the fact that it cannot exert control over a pilot once he takes the helm of a vessel. *See McKeithen,* 441 F.Supp. at 1220 (*citing Guy v. Donald,* 203 U.S. 399, 27 S.Ct. 63, 51 L.Ed. 245 (1906); *Dampskibsselskabet Atlanta A/S v. United States,* 31 F.2d 961 (5th Cir.1929)).

Similarly, the Court finds that the Association lacks control over the river port pilots. The plaintiff contends that because state law mandates the fees a pilot may charge, (*see* LSA R.S. 34:997, 34:1121–22), and prohibits pilots from soliciting or refusing employment, (*see* LSA R.S. 34:1001(A)(3), 34:1004), that pilots do not have sufficient "control" over their work to be independent contractors. However, it is the state law, and not the Association, which has control over these aspects of the pilots' work. Thus, these statutory requirements are irrelevant to determining whether the *Association* has sufficient control over the pilots to be their "employer" for the purposes of the ADEA.

Other undisputed facts which support the finding that the Association is not an employer include: (1) the Association does not hire or fire pilots, (2) pilots are specialists with a high degree of skill, (3) the Association deducts no withholding tax or Social security from amounts paid to the pilots; and (4) the pilots accrue no annual leave time. In fact, the plaintiff points to only one an indicia of an employee/employer relationship, i.e., that the Association's Charter creates a retirement plan. The retirement plan, alone, especially given the other relevant factors, is insufficient to make the Association an employer of pilots for the purposes of the ADEA. Thus, the Court finds that the pilots operate as independent contractors, and the Association is not an employer under the ADEA.

The plaintiff has also alleged that an indirect employment relationship may be sufficient to bring an "employer" within the ambit of the ADEA (or Title VII). *See Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338 (D.C.Cir.1973); *Doe v. St. Joseph's Hospital,*

---

**6.** The New Orleans and Baton Rouge Steamship Pilots Association operates similarly to the Cres- cent River Port Pilots Association.

788 F.2d 411 (7th Cir.1986). These cases are distinguishable. In *Sibley* the court noted that "To permit a *covered employer* to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer, while it could not do so with respect to employment in its own service, would be to condone continued use of the very criteria for employment that Congress has prohibited." 488 F.2d at 1341 (emphasis added). Cases interpreting *Sibley* have held that to be liable based upon an indirect employment relationship, the defendant/employer must be an "employer" within the definition of Title VII or the ADEA, even though the defendant may not be the plaintiff's employer. *See Shrock v. Altru Nurses Registry,* 810 F.2d 658 (7th Cir.1987); *Graves v. Women's Professional Rodeo Ass'n, Inc.,* 708 F.Supp. 233 (W.D.Ark.1989). The Association is not such an employer.

## THE BOARD IS NOT AN "EMPLOYER"

■ The plaintiff argues that because the Board is a state-created entity, the Board is an employer within the meaning of 29 U.S.C. § 630(b)(2) which defines an employer as "a state or political subdivision of a State." A state agency is not an employer for the purposes of the ADEA or Title VII, however, when it is sued in its licensing or regulatory capacity. *Fields,* 906 F.2d at 1020; *George v. New Jersey Board of Veterinary Medical Examiners,* 794 F.2d 113 (3d Cir.1986); *Haddock v. Board of Dental Examiners of California,* 777 F.2d 462 (9th Cir.1985); *EEOC v. Waterfront Commission of New York Harbor,* 665 F.Supp. 197, 199–200 (S.D.N.Y.1987); *National Organization for Women v. Waterfront Commission of New York Harbor,* 468 F.Supp. 317, 320 (S.D.N.Y. 1979); *see* footnote 4 *supra; see also Tyler v. Vickery,* 517 F.2d 1089, 1096 (5th Cir.1975), *cert. denied* 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976), ("Title VII does not apply by its terms, of course, because the Georgia Board of Bar Examiners is neither an 'employer,' an 'employment agency,' nor a 'labor organization' within the meaning of the statute"). In *Fields,* for example, the court granted summary judgment in favor of the state on an ADEA claim brought against the state of Texas by two teachers who were terminated after making unsatisfactory scores on a statewide certification examination. 906 F.2d at 1020. The Fifth Circuit held that the State's role with respect to the test "is analogous to that of state bar administrators and other state licensing or certification agencies previously held not to employers of unsuccessful test takers under Title VII (or the ADEA)." *Id.*

> The plaintiff's complaint alleges that
> in establishing the *requirements for licensure* for river port pilots for the Port of New Orleans the [Board] and the [Association] are engaged in an integrated enterprise and are a single employer within the meaning of the [ADEA] and the [LADEA].

Plaintiff's Complaint, ¶ 15 (emphasis added). Thus, it is clear that the plaintiff's claim arises against the Board in its *licensing* capacity only. Thus, the plaintiff cannot state a claim against the Board as an employer under the ADEA.

## THE BOARD AND THE ASSOCIATION ARE NOT A "SINGLE EMPLOYER"

■ The plaintiff alleges that the Board and the Association are an "integrated enterprise" and a "single employer" within the meaning of the ADEA and LADEA. The plaintiff's claim is based upon the following: (1) the Association's apprenticeship program is an essential part of the process of becoming a certified river port pilot, (2) the Board adopted an identical age restriction to that contained in the Association's charter, and (3) the list of all commissioned river pilots is identical to the list of all Association members (i.e., all river port pilots have become members of the Association).

The Board, in its duty to establish the requirements for certification as a river port pilot, is empowered to approve apprenticeship programs. LSA R.S. § 34:991(B). The Board has exercised that power to approve the Association's apprenticeship program as a necessary step toward becoming a river port pilot. While the Association may be related to the Board in this context, that relationship does not make either or both parties an employer for the purposes of the ADEA. The plaintiff's complaint arises out

of the roles of the Board and the Association *in the licensing process,* not in their capacity as employers. The Board, alone, could not be sued in its licensing capacity. The Board's relationship to another entity, which is also not an employer within the meaning of the statute, does not magically turn both entities into a single employer which can be sued under the ADEA.[7]

### THE ASSOCIATION IS NOT AN "EMPLOYMENT AGENCY"

▆▆ Although plaintiff's complaint only alleges that the Board and Association constitute a "single employer" for the purposes of the ADEA, in opposition to the Association's motion for summary judgment, the plaintiff asserts that the Association could be characterized as an "employment agency." An employment agency is defined by the ADEA as a "person regularly undertaking with or without compensation to procure employees for an employer." 29 U.S.C. § 630(c).[8] The Court has already noted *supra* that the pilots operate as independent contractors. An independent contractor is not an "employee" for purposes of ADEA coverage. *Hickey v. Arkla Industries, Inc.,* 699 F.2d 748 (5th Cir.1983). Thus, to the extent that the Association supplies pilots for vessels, it does not procure *employees.* As the Court noted in *Hickey:*

> There is no legislative history to support [the plaintiff's] contention that employee status is not required for coverage under the ADEA. Moreover, his argument defies a plain reading of the statute. Whether it would be desirable to include independent contractors within ADEA coverage is clearly a matter for Congress, and emphatically not the courts to decide.

*Hickey,* 699 F.2d at 753.

The ADEA does not prevent all age discrimination against those who work for a living. Whatever the merits of the age restriction included in the river port pilot apprenticeship program, the Court finds that the Board and the Association are not employers covered by the ADEA or the LADEA. The Court finds that there are no *genuine* issues of material fact, and that the Board and Association are entitled to judgment as a matter of law. *See* Fed.R.Civ. Proc. 56(b) & (c).

Accordingly,

IT IS ORDERED that

(1) the defendant, Crescent River Port Pilots Association's Motion for Summary Judgment is GRANTED and the hearing on the motion set for February 12, 1992 is CANCELED;

(2) the defendant River Port Pilot Commissioners' Motion for Summary Judgment is GRANTED and the hearing on the motion set for February 26, 1992 is CANCELED;

(3) the Clerk is directed to enter judgment in favor of the defendants and against the plaintiff, dismissing the plaintiff's claims.

---

**7.** The Fifth Circuit has held that, although it controls access to the practice of law, the Georgia State Bar Association is not an employer within the meaning of Title VII. *See Tyler v. Vickery, supra.* Potential bar applicants must first be admitted to and graduate from accredited law schools. Plaintiff's argument, by extension, would transform bar associations and law schools into a "single employer" with respect to Title VII or ADEA claims made by bar appli-

cants. There is no support for such a result in the language or legislative history of either statute.

**8.** Despite the plaintiff's suggestion to the contrary, the definitions in 29 U.S.C. § 630 are to applied "for the purposes of this Act" and, thus, apply throughout all the provisions of the Act.