Daniel R. MEYERS, Jr.,
Plaintiff–Appellant,

v.

M/V EUGENIO C, its engines, tackle, apparel, etc., et al., and Costa Armatori S.P.A., Defendants,

and

Costa Armatori, S.P.A.,
Defendant–Appellee.

No. 87–3457

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 21, 1988.

Lester J. Lautenschlaeger, Jr., Lautenschlaeger & Oberhelman, New Orleans, La., for plaintiff-appellant.

Gustave A. Manthey, J. Francois Allain, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for defendants.

Before RUBIN, GARWOOD, and JONES, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Whether a grounded vessel is seaworthy seems at least semantically a rhetorical question. When, however, the vessel is in all respects other than its temporary predicament fit for navigation it may be, as the district court correctly held. We reverse, however, its summary judgment finding that the officers and crew of the EUGENIO C were not negligent in failing to place the pilot ladder in a less precarious location.

## I.

The EUGENIO C, a large passenger vessel owned and operated by Costa Armatori, ran aground near the entrance to the Southwest Pass of the Mississippi River. Daniel R. Meyers, Jr., a bar pilot with 27 years of experience, was dispatched aboard the M/V DELTA, a 42-foot pilot boat, to relieve the bar pilot who had been aboard the vessel and had completed his tour of duty.

Although it was a clear day, the wind was blowing 25–30 miles per hour from the northwest, and the waves were approximately 3–5 feet in height. Meyers knew of the wind and wave conditions and that the EUGENIO C was aground. Because the bow of the EUGENIO C was headed directly into the wind, the waves were blowing down both sides of the vessel. Consequently, no lee or smooth water was available when the DELTA approached the EUGENIO C, and because the EUGENIO C was aground, it could not move to provide such a lee.

As the DELTA maneuvered alongside the EUGENIO C, it was bounced about by the waves. A port approximately 10 feet high by 3 feet wide is located on the port side of the EUGENIO C. A pilot's ladder

hung from this port, about 6 feet above the water. In order to transfer to the EUGENIO C, Meyers grabbed the ladder with one hand. Just as he did so, the wind and waves caused the DELTA to pull away. As Meyers reached for the ladder with his other hand, his body swung into the ship, his knee struck the bulkhead, and he was injured. Meyers sued for this injury, contending that the owners of the vessel and their agents failed to provide him with a seaworthy vessel and were negligent in violation of their duties under general maritime law.

The district court granted Costa Armatori's motion for summary judgment, finding that "the M/V EUGENIO C was reasonably fit for its intended use at the time of the plaintiff's alleged injury and that the grounded, immobile condition of the M/V EUGENIO C did not render the vessel unseaworthy"; (2) "[Meyers's] claim that the ladder in question was defective or misplaced forms no basis for liability on the part of the defendant, Costa Armatori"; and (3) Meyers's claim that the officers and crew failed to warn him not to come aboard when they knew or should have known it would be dangerous "forms no basis for liability on the part of the defendant, Costa Armatori" because Meyers had been a bar pilot for 27 years and knew of the dangers of boarding a vessel in rough water.

## II.

Summary judgment may be rendered only if it is established that there is no genuine dispute as to material facts and the moving party is therefore entitled to judgment as a matter of law.[1] The record before the court on a motion for summary judgment must be "examined in the light most favorable to the nonmovant," and any doubt must be resolved in his favor.[2]

As the Supreme Court held in *Celotex Corporation v. Catrett:* "One of the principal purposes of the summary judgment rule is to isolate and dispose of factu-

---

1. Fed.R.Civ.P. 56(c); *Stafford v. U.S.*, 611 F.2d 990, 993 (5th Cir.1980).

2. *Stafford*, 611 F.2d at 993.

ally unsupported claims or defenses." [3] After adequate opportunity for discovery, the party who opposes summary judgment must, if he bears the burden of proof, adduce some evidence of facts that, if proved, would justify a judgment in his favor.[4]

■ A shipowner has an absolute, nondelegable duty to furnish a vessel "reasonably fit for [its] intended use" [5] to those who work aboard the vessel.[6] The duty to provide a seaworthy vessel is sometimes, erroneously, called a warranty, a term that is apt only because it is a species of liability without fault. The duty of the owner of the vessel is to provide a vessel in such condition that it is suitable for its voyage and incident uses.

■ Meyers asserts homonymously that his claim that the EUGENIO C was unseaworthy "is not grounded on the fact that the vessel was grounded, but rather on the fact that the vessel did not provide [him] with a lee to facilitate his safely boarding." This claim asserts negligence, not unseaworthiness, because Meyers does not complain of the condition of the vessel but of the failure of those navigating it to provide him with a lee.

■ The EUGENIO C was reasonably fit for its intended use even though it was aground at the time the alleged injury occurred. No defect in the vessel itself or its appurtenances led to Meyers's injury. Had the EUGENIO C been aground in another position, the weather conditions might have created a lee that would have facilitated boarding it. The extreme weather conditions alone did not make the EUGENIO C unseaworthy at the time of the pilot's injury, for the standard of seaworthiness "is not perfection, but reasonable fitness; not

a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service." [7] Therefore, the district court did not err in finding that the EUGENIO C was not unseaworthy.

## III.

■ Meyers charges that the officers and crew were negligent in failing to provide him with a lee to facilitate his boarding the vessel; failing to reposition the ladder to extend from one of the ports further aft on the vessel, to take advantage of the lee that might have been available under the angle of the curvature to the vessel's stern; and failing to warn him of the danger of boarding the EUGENIO C in such adverse weather conditions.

The crew of a vessel has a duty to provide a reasonably safe means of ingress to or egress from a vessel,[8] but it does not have a duty to do the impossible: to change the wind and waves or to move a grounded vessel. Because the vessel was aground, it could not be maneuvered to provide Meyers with a lee.

■ The crew did have a duty to do what might reasonably have been done to decrease the hazard of boarding the vessel under the existing conditions. Meyers asserted in his affidavit in opposition to the summary judgment motion that "the port from which the pilot ladder extended was approximately midship, but that other ports existed further aft from which the pilot ladder could have been utilized." Meyers also stated that a port to the stern would have provided "somewhat of a lee" because of the curvature of the ship towards its stern. The district court held that this evidence was speculative and did not create

**3.** 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

**4.** *See Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986).

**5.** *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960); *Delome v. Union Barge Line Co.,* 444 F.2d 225, 230 (5th Cir.), *cert. denied,* 404 U.S. 995, 92 S.Ct. 534, 30 L.Ed.2d 547 (1971).

**6.** *Mitchell,* 362 U.S. at 550, 80 S.Ct. at 933; *Delome,* 444 F.2d at 230.

**7.** *Mitchell,* 362 U.S. at 550, 80 S.Ct. at 933; *Delome,* 444 F.2d at 230.

**8.** *See Massey v. Williams–McWilliams, Inc.,* 414 F.2d 675 (5th Cir.1969), *cert. denied,* 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681 (1970).

a material question of fact concerning whether a safer means of access existed.

The statement that there were ports to the aft within the curvature of the ship is not speculative. If there were in fact such ports, as the affidavit asserted, it is a reasonable inference that one of them may have provided a more sheltered place to board. Because the vessel was headed directly into the wind, it is reasonable to infer that a curve to the stern of the vessel may have provided a lee. Meyers's affidavit therefore creates a material question of fact concerning whether the crew might have provided an alternative and safer way for Meyers to board the vessel.

With regard to Meyers's claim that the crew of the EUGENIO C was negligent in failing to warn him of the danger, the district court found that "Mr. Meyers had been a bar pilot for about 27 years at the time of his alleged injury. He knew of the dangers associated with boarding a vessel in rough weather. Therefore, this contention by the plaintiff forms no basis for liability on the part of the defendant, Costa Armatori, S.P.A."

Because we reverse the summary judgment based on the other issues discussed, and because the district court did not amplify its conclusory statement, we do not express any opinion concerning it.

For these reasons, the judgment of the district court is AFFIRMED with regard to its finding that the EUGENIO C was not unseaworthy, but REVERSED insofar as it absolves the defendant of liability for negligence, and the case is REMANDED for further proceedings consistent with this opinion.