**In re OLM ASSOCIATES, Debtor.**

**OLM ASSOCIATES, Plaintiff,**

**v.**

**BRIGHT BANC SAVINGS ASSOCIATION, Defendant.**

**Bankruptcy No. 388–35435–SAF–11. Adv. No. 388–3797.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Feb. 28, 1989.

Gerritt Pronske, Dallas, Tex., for debtor.

Paul Wickes, Dallas, Tex., for Bright Banc.

## MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Bankruptcy Judge.

On November 16, 1988, OLM Associates, debtor and plaintiff in this adversary proceeding, filed a complaint against Bright Banc Savings Association, as defendant, seeking to void a security interest under § 544 of the Bankruptcy Code. On December 16, 1988, Bright Banc answered the complaint. Both parties have moved the court for entry of a summary judgment. The respective parties have objected to the respective motions for summary judgment and filed their responses with accompanying affidavits. On February 9, 1989, the court conducted a hearing on the motions for summary judgment. Both parties were represented by counsel at the hearing. After entertaining the arguments of counsel, and at the request of the parties, the court allowed OLM to file a brief in response to legal issues raised by Bright Banc at the hearing and afforded Bright Banc an opportunity to counter the response of OLM. On February 23, 1989, the record was completed and the court took the matter on advisement.

After review of the moving and responsive documents, briefs, affidavits, and all other files, records and documents in the bankruptcy case and this adversary proceeding, the court concludes that OLM's motion for summary judgment must be granted and Bright Banc's motion for summary judgment must be denied.

The court has jurisdiction over this core adversary proceeding under 28 U.S.C. § 157(b)(2)(K) and § 1334.

## I. *Facts*

In 1983, OLM was formed to acquire, develop and construct a mid-rise office building in the Oak Lawn area, near downtown Dallas, Texas. Bright Banc, as the successor in interest to Texas Federal Savings and Loan Association, provided the construction financing to OLM. OLM contracted with Kajima International to construct the building. After completion of construction, OLM could not financially operate the office building. Additionally, OLM sued Kajima for major defects in the construction of the building. OLM's complaint seeks over $7 million in damages from Kajima.

Bright Banc secured the loan to OLM by, *inter alia*, a deed of trust lien, a security agreement, and an assignment of the Kajima construction contract. But Bright Banc's security interest in the personal property described in the financing statement, filed on August 8, 1983, lapsed upon Bright Banc's failure to file a continuation statement after the expiration of five years. The filing lapsed in August 1988. This dispute centers on the effect of that lapse on the Kajima construction contract and the proceeds of any successful litigation against Kajima.

On September 6, 1988, OLM filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Almost immediately after the filing of the bankruptcy petition, on September 15, 1988, Bright Banc moved for relief from the automatic stay to foreclose on the property securing the debt. At the preliminary hearing on Bright Banc's motion, the court continued the automatic stay pending the results of a final hearing. On November 16, 1988, the court conducted a final hearing on Bright Banc's motion. At the conclusion of the hearing, the court ruled that although the estate had no equity in the real property, the stay would remain in effect provided that OLM file a plan of reorganization and disclosure statement within the 120–day exclusivity period.

On January 18, 1989, Bright Banc filed its second motion for relief from the stay alleging, *inter alia,* that the plan filed by OLM was unconfirmable. At the preliminary hearing on Bright Banc's second motion, the court lifted the stay to allow Bright Banc to foreclose on the office building.

Prior to the lifting of the stay, on November 16, 1988, OLM filed a complaint seeking relief under 11 U.S.C. § 544. The complaint seeks to void Bright Banc's security interest in the Kajima construction contract. The complaint alleges, *inter alia,* that Bright Banc's security interest in the Kajima construction contract became unperfected upon Bright Banc's failure to file a continuation statement and is avoidable by OLM, as the debtor-in-possession, under 11 U.S.C. § 544.

Bright Banc does not dispute that its financing statement and security interest in personalty lapsed and became unperfected prior to the filing of the bankruptcy petition. However, Bright Banc asserts that the Kajima construction contract "vested" in Bright Banc by virtue of the provisions of an assignment or, alternatively, the Kajima construction contract is covered by Bright Banc's deed of trust lien. In addition to the foregoing, Bright Banc has moved for summary judgment with respect to its security interest or right of setoff relating to certain funds held by Bright Banc pending resolution of the disputes between OLM and Kajima.

II. *Nature of Summary Judgment*

Under Rule 56(c), Fed.R.Civ.P., made applicable to this case by Bankruptcy Rule 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–

56, 89 L.Ed.2d 538 (1986); *Washington v. Armstrong World Industries, Inc.,* 839 F.2d 1121, 1122 (5th Cir.1988) (per curiam) (Fifth Circuit will consider appeal of summary judgment under recently interpreted Supreme Court standards). The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Meyers v. M/V EUGENIO C,* 842 F.2d 815, 816–17 (5th Cir.1988). On a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson,* 106 S.Ct. at 2513; *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; *Myers,* 842 F.2d at 816; *Wallace v. American Petrofina, Inc.,* 668 F.Supp. 586, 589 (E.D.Tex.1987). The existence of a material factual dispute is sufficient to bar summary judgment when the disputed fact is determinative of the outcome under applicable governing law. *Anderson,* 106 S.Ct. at 2510.

The standard for granting summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a). *Celotex,* 106 S.Ct. at 2553; *Anderson,* 106 S.Ct. at 2511. The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on evidence that has been admitted. *Anderson,* 106 S.Ct. at 2512. In essence, however, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require trial or whether one party must prevail as a matter of law. *Id.*

A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 106 S.Ct. at 2553. However, once the motion for summary judgment is made and supported as described above, Rule 56(e) pro-

vides that a party opposing the motion may not rest upon the mere allegations or denials in his pleading, but his response must set forth specific facts showing that there is a genuine issue for trial. *Celotex,* 106 S.Ct. at 2553; *Anderson,* 106 S.Ct. at 2510; *Matsushita,* 475 U.S. at 587. When the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita,* 475 U.S. at 587.

Although both parties have requested and argued for summary judgment, that does not by itself indicate that there are no genuine issues of material fact; the court must look at each motion separately in determining whether judgment may be entered in accordance with applicable principles. *In re Pettibone Corp.,* 90 B.R. 918, 922 (Bankr.N.D.Ill.1988) *citing,* C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2720 (2d ed. 1983 & Supp. 1987). Cross-motions for summary judgment do not require the court to decide the case on those motions; the court can deny both motions if the parties have failed to meet the burden of establishing no genuine issue of material fact. *Id.*

### III. *Nature of Bright Banc's Interest in the Kajima Construction Contract*

OLM asserts that the Kajima construction contract is covered by the provisions of Article 9 of the Texas Uniform Commercial Code as either an "account" or a "general intangible." OLM contends that any security interest Bright Banc had in and to the Kajima construction contract lapsed and became unperfected because of Bright Banc's failure to file a continuation statement. OLM concludes that Bright Banc was holding an unperfected security interest at the time of the bankruptcy filing which is voidable by OLM pursuant to § 544.

Bright Banc counters that the Kajima construction contract had "vested" in Bright Banc prior to the filing of the bankruptcy petition. Bright Banc asserts that by virtue of the assignment of contract agreement and/or the general assignment language contained in the deed of trust, the "vesting" occurred when OLM defaulted. Bright Banc concludes that the "vesting" occurred pre-petition and is not avoidable under § 544.

### A. *Security Interest or "Vested" Assignment*

■ State law governs the security interest in property that a debtor brings into bankruptcy. Consequently, the court must apply Texas law to determine and construe the interest of Bright Banc in the Kajima construction contract. *See, In re Waldron,* 65 B.R. 169, 70–71 (Bankr.N.D.Tex. 1986), *citing, Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

■ To construe the assignment of the Kajima contract, the court must determine the contractual intent of Bright Banc and OLM. *See, Hillcrest State Bank v. Bankers Leasing Corp. of Texas,* 544 S.W.2d 727 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r. e.); *Clark v. Vaughn,* 504 S.W.2d 550 (Tex. Civ.App.—Dallas 1973, writ ref'd n.r.e.). In determining contractual intent, documents executed in connection with the same contemporaneous transaction are to be construed together. *See, Jim Walter Homes, Inc. v. Schuenmann,* 668 S.W.2d 324 (Tex.1984); *Richland Plantation Co. v. Justiss–Mears Oil Co., Inc.,* 671 F.2d 154 (5th Cir.1982); *Taylor v. Brennan,* 621 S.W.2d 592, 594 (Tex.1981); *In re Prichard Plaza Associates Limited Partnership,* 84 B.R. 289, 299 (Bankr.D.Mass.1988).

■ The assignment of the Kajima contract was made pursuant to the terms of a certain assignment of contract and consent and agreement.[1] The assignment of contract agreement to Bright Banc expressly grants Bright Banc all of OLM's rights under the Kajima construction contract *after* default. The initial paragraph of the assignment of contract agreement contains the words "as additional security" which indicates that the document is not transferring ownership of an asset. *See, Taylor v.*

---

**1.** Although the document was executed approximately four months after the other loan documents, the form of the document was attached as an exhibit to the loan agreement which was executed and delivered contemporaneously with all the other loan documents.

*Brennan,* 621 S.W.2d 592, 594 (Tex.1981) (where in the context of an assignment of leases the court found that the language "in order to further secure" evidenced the parties intended a pledge and not a transfer of title); *cf. In re Ventura–Louise Properties,* 490 F.2d 1141 (9th Cir.1974), (the court found an absolute assignment where the assignment language was not tempered by an express limitation such as the words "additional security").

The deed of trust contemplates the taking of a security interest in the Kajima construction contract. The Kajima construction contract is included in the broad definition of "Collateral" contained in the deed of trust. The definition of "Collateral" includes, without limitation, "all ... instruments, documents, general intangibles ... arising from or by virtue of any transactions related to the [property] ..." Under the deed of trust, OLM represented and warranted to Bright Banc that OLM had authority "to grant a *security interest* in the Collateral." (Emphasis supplied). Additionally, if OLM paid the debt, the assignment never vests, or, presumably, if OLM paid the debt after a default, Bright Banc would not retain rights to the Kajima contract. These provisions constitute indicia that the parties intended to create a security interest. *See Hillcrest State Bank,* 544 S.W.2d at 728; *Clark,* 504 S.W.2d at 553; The deed of trust and the separate assignment of contract document construed together evidence the parties intent to create a security interest.

Moreover, Bright Banc has not credited any of the debt owed by OLM by the "vesting" of the Kajima contract. In fact, counsel for Bright Banc stated at the hearing that any credit given to OLM would be determined later, possibly at a non-judicial foreclosure sale of the realty.[2] Some debt service coverage or *pro tanto* reduction of the debt would be required upon the "vesting" of the assignment of the Kajima contract. *See In re Fry Road Associates, Ltd.,* 66 B.R. 602, 605 (Bankr.W.D.Tex. 1986); *In re Tripplet,* 84 B.R. 84, 88 (Bankr.W.D.Tex.1988).[3] The lack of any credit or consideration given to OLM upon the so called "vesting" amounts to further evidence of the parties' intent to create a security interest.

■■■ Courts should be extremely reluctant to give effect to lending documents that would obviate the need for a creditor to go through state promulgated procedures to recover collateral. Judicial foreclosure proceedings are required to recover pledged collateral unless a statute provides otherwise. A creative draftsman should not be permitted to allow a creditor to deprive a debtor of its due process rights under state foreclosure laws.

The court having determined that Bright Banc intended to take, and OLM intended to grant, a security interest in the Kajima construction contract, the court must now determine whether the security interest is governed by the Texas Uniform Commercial Code relating to personalty or real property perfection laws.

### B. *Personal or Real Property Security Interest*

■■■ Bright Banc contends that even if the Kajima contract has not been assigned, Bright Banc properly perfected its lien conveyed by the deed of trust. Bright Banc argues that a deed of trust lien covering the realty also covers all interests "inextricably intertwined" with the realty. Bright Banc asserts that the Kajima contract is an "appurtenance" covered by the perfected deed of trust lien.

Article 9 governs several transactions intimately related to real estate, such as a

---

2. The parties have not addressed whether the lack of consideration falls under § 548 and is a fraudulent transfer. Because the parties have not addressed this issue, the court does not consider or decide the issue. Additionally, the court cannot grant summary judgment on grounds not requested by the moving party. *See, John Deere Co. v. American National Bank,* 809 F.2d 1190, 91–92 (5th Cir.1987).

3. Although both *Tripplet* and *Fry Road* pertain to the vesting of an assignment of rents, the court finds the cases authoritative for the proposition that credit must be given upon the acquisition of a portion of the debtor's property.

pledge of a real estate mortgage note as collateral for a loan. Article 9 covers the note as an "instrument," even though the underlying security for the note is realty. *See e.g. In re Atlantic Mortgage Corp.*, 69 B.R. 321 (Bankr.E.D.Mich.1987); *In re Maryville Sav. & Loan Corp.*, 743 F.2d 413 (6th Cir.1984). Under the Texas UCC, a contract right is either an "account" or a "general intangible." *See,* Official UCC Reasons for 1972 Change in Official Text to Section 9.106 (excluding the term "contract right" from the previous statute as "unnecessary"). Courts have consistently held that rights to receive money under a contract related to realty is governed by Article 9 and requires the filing of a financing statement. *In re Southworth,* 22 B.R. 376 (Bankr.D.Kan.1982) (holding that assignment of debtor's right to receive payment under a contract for deed to real estate is unperfected for failure to file financing statement); *see also In re S.O. A.W. Enterprises, Inc.*, 32 B.R. 279 (Bankr. W.D.Tex.1983) (court held that assignment of numerous contracts for the sale of real property required Article 9 compliance); *In re Orecchio*, 54 B.R. 685 (Bankr.D.N.J. 1985) (secured creditor is unperfected for failure to file UCC–1 covering vendor's interest in contract for deed as a "general intangible"); *compare, In re Gemini at Dadeland Ltd.*, 24 B.R. 57 (Bankr.S.D.Fla. 1982) (collections from purchase agreements for condominium sales was covered as personal property under Article 9). Additionally the Texas UCC has specific provisions relating solely to security interests in contracts. *See,* Tex.Bus. & Comm.Code Ann. §§ 9.317 and 9.318 (Vernon Supp. 1989).

In line with the above cases and in accordance with the scope of Article 9 of the Texas UCC, the court holds that Article 9 governs proceeds recovered for a breach of a construction contract. Because Bright Banc's perfection lapsed for the Kajima contract, Bright Banc's security interest can be avoided under § 544 of the Bankruptcy Code. Therefore, any proceeds recovered from Kajima for breach of the construction contract shall be property of the estate, free and clear from the liens and encumbrances of Bright Banc.

OLM has also asserted tort claims against Kajima. Tort claims by definition are not recoverable under the Kajima construction contract. They are separate and distinct claims and are not covered by Article 9. *See,* Tex.Bus. & Comm.Code Ann. § 9.104(11).

At least one circuit court has dealt with the tort claim exemption under the UCC. *See, In re Ore Cargo, Inc.*, 544 F.2d 80 (2d Cir.1976); *compare, In re Monroe County Hous. Corp., Inc.*, 29 B.R. 686 (Bankr.S.D. Fla.1983) (holding that a writ of garnishment arising out of a tort claim prevails over competing security interest on which financing statement was filed a day after garnishment was served). In *Ore Cargo* the Second Circuit held that a properly perfected "general security agreement" covering all types of collateral was insufficient to attach to the proceeds of a tort claim. The Second Circuit concluded that attachment of a security interest was dependent upon state common law of assignment. *In re Ore Cargo, Inc.*, 554 F.2d at 82.

Although Bright Banc has extremely broad assignment provisions in its loan documents, those provisions do not expressly assign future tort claims. The court has not been provided with any evidence that the parties intended to assign future tort claims. An intent to assign future tort claims cannot be inferred from the loan documents. In any event, any tort that may have been committed by Kajima occurred after the assignments by OLM to Bright Banc. Texas law requires that an assignment confer a present right on the transferee and the transfer must allow the assignor no control. *See generally, In re Ashford,* 73 B.R. 37 (Bankr.N.D.Tex.1987); 7 Tex.Jur. 3rd *Assignments* § 39 (1980). OLM filed the suit against Kajima. Bright Banc has not taken any affirmative action after the filing to replace OLM as plaintiff in the suit or to intervene. Additionally, an assignment of a tort claim requires the assignor to receive some consideration for the assignment. *See generally, United*

States v. Currency Totalling $48,318.08, 609 F.2d 210 (5th Cir.1980), *reh'g den.*, 612 F.2d 579; *see also*, 7 Tex.Jur. 3rd *Assignments* § 26 (1980). Bright Banc has not provided the court with any summary judgment evidence that OLM received any consideration for the purported assignment, including, without limitation, a reduction of the debt owed by OLM. Therefore, any proceeds recovered from Kajima for any tort claims shall be property of the estate, free and clear from all liens and encumbrances of Bright Banc.

### IV. *Nature of Bright Banc's Interest in the Deposit Account*

Bright Banc asserts that it has a security interest and/or setoff rights in a certain bank account deposited by Bright Banc.

■■■ Section 553(a) of the Bankruptcy Code provides in part that "... this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor ..." Texas law governs the nature and existence of Bright Banc's right of setoff. *See, In re Williams*, 61 B.R. 567, 70–71 (Bankr.N.D.Tex.1986); *In re Texas Mortg. Services Corp.*, 761 F.2d 1068, 1075 (5th Cir.1985). However, a setoff of existing obligations in a bankruptcy forum depends upon the terms of § 553, and not upon the terms of state laws or statutes. *In re Warren*, 93 B.R. 710, 711 (Bankr.C.D.Cal.1988) *quoting, Collier on Bankruptcy* ¶ 553.06 (15th ed. 1988). To qualify as a mutual debt, the debt must be in the same right and between the same parties. *Warren*, 93 B.R. at 712, *citing, In re Visiting Home Services, Inc.*, 643 F.2d 1356, 1360 (9th Cir.1981). "In other words, debts are not mutual if the parties acted in different capacities." *Id.*

■ Bright Banc has not provided the court with any summary judgment evidence regarding the amount of the account, the source of funds comprising the account, the date the funds were deposited and the relationship between the parties relating to the deposit of the account. Bright Banc has the burden of showing that there is no genuine issue of fact. *Anderson*, 106 S.Ct. at 2514. Bright Banc has not met its burden. Therefore, sum-

mary judgment is not appropriate with respect to the deposit account.

### V. *Orders*

Based upon the foregoing memorandum opinion,

It is ORDERED that:

1. OLM's motion for summary judgment is GRANTED as follows: Bright Banc's security interest and/or lien in all personalty originally perfected by the filing of Bright Banc's financing statement, including the Kajima construction contract, is void and the unencumbered property is preserved for the benefit of the estate; and

2. Bright Banc's cross-motion for summary judgment is DENIED.