Ronald BLANCQ

v.

HAPAG–LLOYD A.G. and Hapag–Lloyd (America), Inc.

Civil Action No. 96–229.

United States District Court,
E.D. Louisiana.

Nov. 24, 1997.

VANCE, District Judge.

### ORDER AND REASONS

Before the Court are two motions filed by the defendants: (1) a motion for summary judgment dismissing the claims of plaintiff Ronald Blancq; and (2) a motion to strike plaintiff's demand for a trial by jury. For the reasons set forth below, both motions are DENIED.

## I. BACKGROUND

Captain Ronald Blancq was employed as a Mississippi River pilot and hired by the M/V NEUREMBERG EXPRESS to perform services on or about January 3, 1995. Pet. ¶ III. The M/V NEUREMBERG EXPRESS was owned/operated by defendants Hapag–Lloyd A.G. and Hapag–Lloyd (America), Inc. (collectively referred to hereinafter as "Hapag–Lloyd"). Pet. ¶ IV. Plaintiff alleges that he was injured when he attempted to leave the vessel by way of the ship's Jacob ladder. Pet. ¶ V. Plaintiff contends that the defendants were negligent in the following ways:

(a) Failing to properly maintain the Jacob's ladder aboard the M/V NEUREMBERG EXPRESS.

(b) Failing to properly anchor or secure the Jacob's ladder aboard the M/V NEUREMBERG EXPRESS.

(c) Failing to provide proper handholds or stanchions in the vicinity of the Jacob's ladder.

(d) Failing to warn petitioner of the defective condition of the M/V NEUREMBERG EXPRESS and its appurtenances.

(e) Failing to properly warn of the slack in the Jacob's ladder aboard the M/V NEUREMBERG EXPRESS, as well as the lack of handholds or stanchions.

Pet. ¶ VI.

Perrin C. Butler, Butler & Stern, Metairie, LA, for Plaintiff.

Doyle Paul Spell, Jr., Darren M. Guillot, Spell & Associates, New Orleans, LA, Robert Seth Reich, Mark S. Senter, Reich, Meeks & Treadaway, Metairie, LA, for Defendants.

This action was originally filed in the 34th Judicial District Court for the Parish of St. Bernard, State of Louisiana, on January 3, 1996. Defendants timely removed the action from the state court to the Eastern District of Louisiana on January 18, 1996. This Court has diversity jurisdiction over this

matter pursuant to 28 U.S.C. § 1332.[1] Hapag–Lloyd now moves this Court for summary judgment and further requests that plaintiff's demand for trial by jury be stricken.

## II.  DISCUSSION

Summary judgment is appropriate when there is no genuine issue as to any material facts, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Factual controversies are resolved in favor of the non-moving party only if there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). The court must determine whether there are any genuine issues of material fact that preclude judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

### A.  Plaintiff's Legal Status

In maritime law, the standard of care owed by the vessel owner to the plaintiff depends upon the plaintiff's legal status. Hapag–Lloyd argues that plaintiff is covered under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901–950, and is owed only a limited duty of care from the vessel owner under § 905(b). Plaintiff asserts that he falls under

neither the Jones Act, nor the LHWCA and that the defendants owed him a warranty of seaworthiness under the doctrine articulated in *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) (hereinafter the "*Sieracki* doctrine").[2]

It is generally recognized that "[t]here is some confusion ... over the status of a pilot who suffers personal injury." 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 13–1 at 238 (2d ed.1994). See generally Guy C. Stephenson, *A Pilot is a Pilot: Compulsory Pilots—Vessel Owner's Responsibilities for Intervention and Personal Injury,* 70 Tul. L.Rev. 633, 638–46 (1995) (reviewing pilot's coverage under Jones Act, LHWCA, and warranty of seaworthiness); Jack L. Allbritton, *Seaman Status in Wilander's Wake,* 68 Tul. L.Rev. 373, 377–85 (1994) (same); David W. Robertson, *Continuing Issues in the Rights of Injured Maritime Workers in the Wilander–Gizoni Era,* 24 Rutgers L.J. 443, 451–59 (1993) (same). Thus, the first question this Court must resolve is the legal status of a river pilot.

Under Louisiana law, river port pilots have the exclusive right to pilot vessels on the Mississippi River between New Orleans and Pilottown, Louisiana, and within certain other geographical limits. La. R.S. 34:996. A river port pilot must be certified by the Board of River Port Pilot Commissioners for the Port of New Orleans and appointed by the governor. La. R.S. 34:992. River port pilots are intensively regulated under state law—for example, the fees charged to the

---

**1.** The Court notes that the "saving to suitors" clause of 28 U.S .C. § 1333 divests the federal courts of exclusive jurisdiction over maritime claims. For purposes of federal question and removal jurisdiction, "[i]t is well established that [general] maritime claims do no 'aris[e] under the Constitution, treaties or laws of the United States.' " *Tennessee Gas Pipeline v. Houston Casualty Ins. Co.,* 87 F.3d 150, 153 (5th Cir.), *reh'g denied,* 95 F.3d 1151 (5th Cir.1996). Thus, the Fifth Circuit has stated in no uncertain terms that "[a] defendant who desires to remove a maritime action from state court to federal court must establish diversity jurisdiction." *In re Dutile,* 935 F.2d 61, 63 (5th Cir.1991).

**2.** Defendants rightfully point out that plaintiff failed to explicitly allege a cause of action for unseaworthiness in his complaint. The claim was, however, raised and fully briefed by both

parties. Further, the pre-trial order indicates that whether plaintiff is entitled to *Sieracki* seaman status and whether the plaintiff is owed a warranty of seaworthiness by Hapag–Lloyd are contested issues of law. It appears to the Court that the conditions underlying plaintiff's claim for negligence also form the basis of plaintiff's claim for unseaworthiness. Indeed, as the Fifth Circuit stated in *Bach v. Trident Steamship Co., Inc.,* 920 F.2d 322 (5th Cir.1991), plaintiffs' claim for unseaworthiness "is nothing more than their negligence claim recast in terms of the warranty of seaworthiness." To the extent that defendants can show prejudice from a lack of notice of the allegation of an unseaworthiness claim, the Court will entertain an appropriate motion for relief from the deadlines imposed by the pretrial scheduling order.

vessels for the pilotage services is set by statute. La. R.S. 34:997. Although a pilot works on each vessel for only a short period of time, he is exposed to the typical hazards of the sea, and his duties are clearly related to the navigation of the vessel.

### 1. Jones Act Coverage

The Jones Act provides a cause of action in negligence for "any seamen" injured "in the course of his employment." 46 U.S.C. § 688(a). In two recent opinions, the United States Supreme Court clarified the definition of "seamen" under the Jones Act. *See Chandris, Inc. v. Latsis,* 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995); *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991). The Supreme Court concluded that there are two requirements for seaman status: First, "an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission." *Chandris, Inc.,* 515 U.S. at 368, 115 S.Ct. at 2190 (internal quotations omitted). Second, "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and nature." *Id.*

■ Prior to these Supreme Court opinions, the Fifth Circuit, in *Bach v. Trident Steamship Co., Inc.,* 920 F.2d 322 (5th Cir. 1991), held that a compulsory river pilot was not a "seaman" under the Jones Act because he was not permanently assigned to any particular vessel or fleet of vessels. The test used by the Fifth Circuit was substantially similar to the test articulated by the Supreme Court in *Wilander* and *Chandris, Inc. See id.* at 324 ("An injured worker attains seaman status by proving: (I) permanent attachment to or substantial work on a vessel or an identifiable fleet of vessels; and (ii) contribution to the function or mission of the

vessel or an identifiable fleet of vessels." (*citing Barrett v. Chevron U.S.A., Inc.,* 781 F.2d 1067, 1072–74 (5th Cir.1986) (*en banc*))). Upon remand from the Supreme Court following the *Wilander* decision, the Fifth Circuit stated that *Wilander* had no effect on its earlier conclusion, and the court reinstated its previous judgment. 947 F.2d 1290, 1291 (5th Cir.1991), *cert. denied,* 504 U.S. 931, 112 S.Ct. 1996, 118 L.Ed.2d 592 (1992).

Although the definition of "seaman" as set forth in *Chandris, Inc.* does not require a maritime worker to have a "permanent" connection with the vessel, the Supreme Court made clear that it believed the seaman's connection to a vessel must be substantial in both nature *and* duration and that the worker must have a relationship with the vessel or employer in question. *Chandris, Inc.,* 515 U.S. at 364–68, 370–71, 115 S.Ct. at 2188–89, 2191; *id.* at 368, 115 S.Ct. at 2189 (summarizing lower courts' standards and stating that "the relationship creating seaman status must be substantial in point of time and work, and not merely sporadic" (internal quotations omitted)).

Thus, this Court concludes that the holding of *Bach*—that a pilot is not a seaman under the Jones Act because he lacks the requisite connection to a vessel or an identifiable fleet of vessels—is consistent with the Supreme Court's most recent pronouncements. Therefore, Captain Blancq is not entitled to the legal benefits of the Jones Act.[3]

### 2. LHWCA Coverage

■ The Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901–950, was originally enacted in 1927 to protect longshoremen and other harbor workers doing loading and repair work, who were excluded from state-law workers' compensation coverage and did not fall within

---

**3.** The Court notes that another possible basis for denying Captain Blancq the status of a Jones Act seaman is his employment relationship with the defendants. The Jones Act is a statutory remedy available to a seaman only against his employer. The problem in this case is that "[p]ilots are not employees of the vessel. Pilots historically are either self-employed, independent contractors, or, at least, not employed by the vessel owners and operators whose vessels they pilot." Allbritton, *supra,* at 382. *See Evans v. United Arab*

*Shipping Co. S.A.G.,* 4 F.3d 207, 215–19 (3d Cir.1993) (holding that a "prerequisite to recovery under the [Jones] Act" is an employment relationship between the plaintiff and defendant and that compulsory pilot failed to establish such a relationship). The Fifth Circuit in *Bach* specifically declined to reach the pilot's employment status. *See Bach,* 920 F.2d at 324 n. 1 ("Because we decided that Bach is not a seaman, we need not consider whether Trident Steamship was his employer for purposes of the Jones Act.").

federal admiralty jurisdiction. *See generally Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 256–60, 97 S.Ct. 2348, 2353–55, 53 L.Ed.2d 320 (1977). Generally, the Act requires employers to provide compensation to their employees for injury arising out of the course of employment, and, in return, the Act grants the employer immunity from tort liability. 33 U.S.C. §§ 904–905.

■ Prior to the 1972 Amendments to the LHWCA, all employees injured upon navigable waters in the course of their employment were covered by the LHWCA. Eligibility for coverage depended solely upon a "situs" test. As the Supreme Court explained:

> [T]he consistent interpretation given to LHWCA before 1972 by the Director, the deputy commissioners, the courts, and the commentators was that (except for those workers specifically excepted in the statute), any worker injured upon navigable waters in the course of employment was "covered ... without any inquiry into what he was doing (or supposed to be doing) at the time of his injury."

*Director v. Perini North River Assocs.,* 459 U.S. 297, 311, 103 S.Ct. 634, 644, 74 L.Ed.2d 465 (1983) (*quoting* G. Gilmore & C. Black, The Law of Admiralty 429–30 (2d ed.1975)). The statute explicitly excluded from coverage any person who was a "master or member of a crew of any vessel." *Id.* at 306, 103 S.Ct. at 641 (*citing* 44 Stat. 1424). Significantly, in 1927 the United States Employees' Compensation Commission, the body in charge of implementing the Act, issued an opinion stating that a temporary pilot of a vessel was considered a "master or member of a crew" under the LHWCA and was thus not protected by the Act. Longshoremen's Act, Opinion No. 22 (Nov. 26, 1927), 1928 A.M.C. 263, *cited in Clark v. Solomon Navigation, Ltd.,* 631 F.Supp. 1275, 1281 (S.D.N.Y.1986).

In 1972, the LHWCA was amended by Congress to expand coverage to "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker." 33 U.S.C. § 902(3). Further, compensation was available if the injury occurred "upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel)." *Id.* § 903(a). As interpreted by the Supreme Court, the Amendment's purpose was to expand coverage to those injured in maritime employment on certain areas adjoining previously covered sites but not actually on navigable waters. *See Perini,* 459 U.S. at 316–24, 103 S.Ct. at 646–51; *Caputo,* 432 U.S. at 263–64, 97 S.Ct. at 2357. Thus, the Amendment required certain workers to satisfy both a "situs" test, as well as a "status" test. *See id.*[4]

In *Perini,* the Supreme Court resolved this apparent tension between the pre–1972 Act and the post–1972 Act and explained that Congress had exhibited no intention to require an employee injured upon the navigable waters in the course of his employment to show that his employment passed the "status" test. *See Perini,* 459 U.S. at 316–24, 103 S.Ct. at 646–51. As the Fifth Circuit recognizes, the current test for coverage under the LHWCA presents a "dual inquiry": "Under *Perini,* an employee may be engaged in maritime employment if he was injured in the course of his employment while on navigable waters. If he was not on navigable waters at the time of his injury, however, he may satisfy the status test only if his work 'is directly connected to the commerce carried on by a ship or vessel under *Gray.*'" *Munguia v. Chevron U.S.A., Inc.,* 999 F.2d 808, 811 (5th Cir.1993) (*quoting Fontenot v. AWI, Inc.,* 923 F.2d 1127, 1130 (5th Cir.1991)). *See also Randall v. Chevron,* 13 F.3d 888, 898 (5th Cir.), *cert. denied,* 513 U.S. 994, 115 S.Ct. 498, 130 L.Ed.2d 408 (1994).[5]

---

4. Additionally, 33 U.S.C. § 902(3)(A)-(H) provides an expanded list of exceptions to the definition of "employee." Pertinent to this discussion, "a master or member of a crew" remains excluded from coverage. *Id.* § 902(3)(G).

5. *See also Herb's Welding, Inc. v. Gray,* 470 U.S. 414, 423–24, 105 S.Ct. 1421, 1427–28, 84 L.Ed.2d 406 (1985) (holding that "land-based activity occurring within the § 903 situs will be deemed maritime only if it is an integral or essential part of loading or unloading a vessel").

As a result of the LHWCA's expansive breadth, it comes as no surprise that courts are divided over whether river or bar pilots are covered under the LHWCA. *Compare Harwood v. Partredereit AF*, 944 F.2d 1187 (4th Cir.1991) (pilot is covered under LHWCA), *cert. denied*, 503 U.S. 907, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992), *with Clark v. Solomon Navigation, Ltd.*, 631 F.Supp. 1275 (S.D.N.Y.1986) (pilot is excluded from LHWCA coverage); *see also Ringering v. Compania Maritima De-La Mancha*, 670 F.Supp. 301 (D.Or.1987) (finding that because river pilot was a "seaman," he was not limited to recovery under the LHWCA and was entitled to remedy of seaworthiness), *aff'd*, 848 F.2d 1243 (9th Cir. 1988). The split arises in part because some courts conclude that pilots are "master[s] or member[s] of a crew" and are therefore excluded from LHWCA coverage. *See, e.g., Clark*, 631 F.Supp. at 1282. This interpretation of "master or member of a crew" is foreclosed in this Circuit by *Chandris Inc., Wilander*, and *Bach*. The Supreme Court in *Chandris, Inc.* and *Wilander* made clear that the Jones Act and the LHWCA are mutually exclusive compensation regimes, and the term "master or member of a crew" is identical to the term "seaman" for Jones Act purposes—"[i]ndeed, 'it is odd but true that the key requirement for Jones Act coverage now appears in another statute.'" *Chandris*, 515 U.S. at 355–56, 115 S.Ct. at 2183–84 (*quoting Wilander*, 498 U.S. at 347, 111 S.Ct. at 813). Having concluded under *Bach, supra*, that a pilot is not a "seaman" for purposes of the Jones Act, this Court is obligated to find that a pilot is also not a "master or member of a crew of any vessel" and hence not excluded from coverage under the LHWCA on those grounds.

Treating a river pilot who is injured upon navigable waters as falling under the LHWCA is problematic, however, for a number of reasons. First, it is inconsistent with the original purpose of the LHWCA. The Act was passed as a "way to provide workmen's compensation for longshoremen and harborworkers injured on navigable waters" who were excluded from state-law workers' compensation coverage because of the maritime nature of their employment. *Caputo*, 432 U.S. at 257–58, 97 S.Ct. at 2354; *see also* 1 Schoenbaum, *supra*, § 7–1 at 371. As noted *supra*, when the LHWCA was first passed in 1927, a pilot was excluded because he was thought to be a "member of a crew." Moreover, the persons intended to be covered by the LHWCA are those whose services aboard the vessel are "of the sort performed by longshoremen and harbor workers and thus distinguished from those employees on the vessel who are naturally and primarily on board to aid in her navigation." *South Chicago Coal & Dock Co. v. Bassett*, 309 U.S. 251, 260, 60 S.Ct. 544, 549, 84 L.Ed. 732 (1940).

The second problem with extending the LHWCA to river pilots is that the statutory compensation scheme affords them little protection. Because a pilot is typically considered an independent contractor,[6] he is not entitled to LHWCA's primary reward: workers' compensation benefits. The only statutory right that would be available to a pilot if he were covered by the LHWCA is an action in negligence against the vessel owner under 33 U.S.C. § 905(b).

Notably, the Fifth Circuit has expressed doubt over whether the LHWCA covers river pilots. In *Bach*, the appellate court noted that "[t]he LHWCA covers those 'engaged in maritime employment.' The record does not clearly show that Bach was the employee of anyone. It is therefore, unclear whether the LHWCA covered him." 920 F.2d at 326 n. 5. Rather than responding to the question of

---

6. Although not necessarily in the context of determining benefits under the LHWCA, courts generally conclude that pilots function as independent contractors. *See Harwood*, 944 F.2d at 1189; *Bach*, 708 F.Supp. 772, 773–74 (E.D.La. 1988), *aff'd on other grounds*, 920 F.2d 322 (5th Cir.), *vacated and remanded*, 500 U.S. 949, 111 S.Ct. 2253, 114 L.Ed.2d 706, *reaff'd on other grounds*, 947 F.2d 1290 (5th Cir.1991), *cert. denied*, 504 U.S. 931, 112 S.Ct. 1996, 118 L.Ed.2d 592 (1992); *see also Steinhort v. Commissioner of Internal Revenue*, 335 F.2d 496, 499 (5th Cir. 1964) (noting that pilot's relationship towards the vessel is comparable to an independent contractor); *Ehret v. State of Louisiana*, 862 F.Supp. 1546, 1550 (E.D.La.1992) (pilots are independent contractors and neither association nor board were "employers" under the Age Discrimination in Employment Act).

LHWCA coverage, however, the court reached the merits of both the pilot's negligence claim under 33 U.S.C. § 905(b) and his unseaworthiness claim under the *Sieracki* doctrine because the court believed the claims were identical. Based on "undisputed summary judgment evidence," the court concluded that both claims failed as a matter of law. *Bach,* 920 F.2d at 327.[7]

In not affirmatively answering whether a river pilot is covered by the LHWCA, the Fifth Circuit avoided the thorny question of a pilot's employment status.[8] As noted *supra,* pilots are generally considered either self-employed, independent contractors, or employees of the pilot's association. *See Evans v. United Arab Shipping Co., S.A.G.,* 4 F.3d 207, 217 (3d Cir.1993) (citing cases). The cases have not held that a pilot is an employee of a vessel he pilots. *See id.* The Fifth Circuit's comments in *Bach* indicate that coverage under the LHWCA depends in part on the pilot's employee status. If the pilot is not employed by "anyone," his LHWCA-status is called into doubt. Several commentators have recognized the pilots' dilemma and, based upon the pilots' nonemployee status, have concluded that pilots should be entitled to a warranty of seaworthiness under the *Sieracki* doctrine. *See* Stephenson, *supra,* at 639–46; Albritton, *supra,* at 383–85; *see also* Robertson, *supra,* at 457 (commenting that providing pilots with protection of seaworthiness is an "unassailable" view and that the proper inquiry to determine a pilot's remedies is his employment status).

River pilots are maritime workers who do not qualify as Jones Act "seamen" and who do not fit comfortably within the LHWCA. Both of these statutory schemes were created in favor of an employee against his employer. In this case, the parties do not dispute that Captain Blancq was self-employed and acted as an independent contractor, with no connection to a particular vessel. Captain Blancq was not employed by the vessel owner. Rather, he is a member and a shareholder of the Crescent River Port Pilots' Association (the "Pilots' Association"). According to its charter, the Pilots' Association is a nonprofit corporation, the purpose of which is "[t]o effect the corporate association of licensed and commissioned Louisiana Crescent River Port Pilots, for their mutual benefit and social betterment." Pl.'s Supplemental Mem., Attach., Art. III. Further, another objective of the corporation is "[t]o provide for a pension and welfare plan for retired shareholders of this corporation, and for their families." *Id.* Each pilot-member holds one share in the corporation, which functions to collect pilotage fees and distribute them to the membership "in their just proportion" after deduction of costs and expenses. *Id.,* Art. VII. Additionally, the Pilots' Association makes rules for the assignment of members to pilot jobs. The charter and by-laws do not characterize pilots as employees of the Pilots' Association, but refers to them as shareholders and members. Given plaintiff's unique employment status, and in the absence of Fifth Circuit authority to the contrary, this Court concludes that it is consistent with the purposes behind the LHWCA and general maritime law to exclude a river pilot from coverage under the LHWCA.

### 3. *Sieracki* Liability

■ The warranty of seaworthiness is a duty that is generally owed to those employees covered under the Jones Act. *See* 1 Schoenbaum, *supra,* § 6–27, at 345. However, for those workers who "fall into the crack between seamen and longshore workers," the *Sieracki* doctrine and the warranty of seaworthiness "still rule[] the sea." *Id.,* § 6–27, at 347. In *Seas Shipping v. Sieracki,* 328

**7.** The Court also notes that in *Meyers v. M/V EUGENIO C,* 842 F.2d 815 (5th Cir.1988) (Rubin, J.), *aff'd on reh'g,* 876 F.2d 38 (5th Cir. 1989), a bar pilot alleged multiple theories of negligence against the shipowner. The Fifth Circuit did not discuss whether the pilot was covered under either the Jones Act or the LHWCA. Rather, the Court recognized the pilot's claims and affirmed the district court's finding that the vessel was seaworthy. Also, the court reversed the district court's granting of summary judg-

ment, finding that a material question of fact existed concerning whether the crew might have provided an alternative and safer way for the pilot to board the vessel. 842 F.2d at 817–18.

**8.** As noted *supra,* the court in *Bach* acknowledged that it was avoiding this discussion when it specifically declined to reach the plaintiff's employment status in regard to his Jones Act claim.

U.S. 85, 99, 66 S.Ct. 872, 880, 90 L.Ed. 1099 (1946), the Supreme Court extended the remedy of unseaworthiness to longshoremen "doing a seaman's work and incurring a seaman's hazards." The *Sieracki* doctrine was expanded by the Supreme Court in *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 413, 74 S.Ct. 202, 207, 98 L.Ed. 143 (1953), to include independent contractors who were subject to the same dangers as those crew members directly employed by the vessel. A river pilot who aids in the vessel's navigation is engaged in seaman's work and exposed to typical seaman's dangers.

The 1972 Amendments to the LHWCA eliminated the unseaworthiness remedy from any employee covered under the LHWCA. *See* 33 U.S.C. § 905(b). Although some courts have concluded that the 1972 Amendments entirely abolished the *Sieracki* doctrine, *see e.g., Normile v. Maritime Co. of Philippines*, 643 F.2d 1380 (9th Cir.1981), the Fifth Circuit has made clear that persons excluded from the LHWCA's coverage may qualify as *Sieracki* seamen for the warranty of seaworthiness. *See Aparicio v. Swan Lake*, 643 F.2d 1109 (5th Cir.1981) (holding that under circumstances in which the maritime worker is not covered by the LHWCA, he may invoke the *Sieracki* unseaworthiness action against the vessel owner); *see also Cormier v. Oceanic Contractors, Inc.*, 696 F.2d 1112, 1113 (5th Cir.1983) (foreign worker outside of LHWCA's coverage entitled to unseaworthiness remedy), *cert. denied*, 464 U.S. 821, 104 S.Ct. 85, 78 L.Ed.2d 94 (1983); *Coats v. Penrod Drilling Corp.*, 785 F.Supp. 614, 622–24 (S.D.Miss.1992) (shore-based worker testing equipment on offshore rig entitled to *Sieracki* claim), *aff'd*, 61 F.3d 1113, 1118 n.2 (*en banc*) (noting that viability of *Sieracki* seaman status was not before the court); *Laakso v. Mitsui & Co. USA, Inc.*, Civ.A.No.88–2450, 1989 WL 149186 at *8–*9 (Dec. 6, 1989 E.D.La.) (worker outside of LHWCA's coverage retains his *Sieracki* unseaworthiness action); *Clark*, 631 F.Supp. at 1283 (pilot not covered under LHWCA is clearly due his remedy for unseaworthiness).

■ Having concluded that Captain Blancq falls outside of both the Jones Act and the LHWCA, he is eligible for the warranty of seaworthiness.[9] As stated by the Fifth Circuit, the test for an unseaworthy condition is whether the vessel, equipment, or appurtenances were "reasonably fit for their intended uses.... The duty to provide a seaworthy vessel is absolute and the owner may not delegate the duty to anyone. Liability for an unseaworthy condition does not in any way depend upon negligence or fault or blame." *Bommarito v. Penrod Drilling Corp.*, 929 F.2d 186, 189–90 (5th Cir.1991). Further, a leading treatise in admiralty law explains:

> The shipowner will prevail by submitting rebuttal evidence that an appliance or piece of machinery was reasonably fit for its intended use even in its imperfect condition. The duty is reasonableness, not perfection. The shipowner is not required to provide the latest and best equipment and there is no warranty against an accident free ship.

1 Schoenbaum, *supra*, § 6–25 at 335.

**B. Motion for Summary Judgment**

■ After a careful review of the evidence submitted in support of and in opposition to the motion for summary judgment, the Court finds that there are genuine issues of material fact which preclude judgment as a matter of law. As reiterated *supra*, Captain Blancq alleges a variety of ways in which the vessel was unseaworthy and/or negligent. Specifically, plaintiff contends that the Jacob's ladder on the M/V NEUREMBERG was not properly secured and that there were no handholds or stanchions in the vicinity of the ladder. Defendants have failed to provide uncontested evidence that establishes that the ladder was reasonably fit for its intended use. Captain Blancq explained that although he could not recall how the ladder was secured, he believed it was not properly secured because when he reached to grasp hold of the ladder, it came up in his hand and he

9. The Court notes that Captain Blancq also has a cause of action for negligence under the general maritime law. The duty of care owed to Captain Blancq by the defendants is one of reasonable care under the particular circumstances. *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959).

twisted around backwards. Dep. of Captain Blancq, Sept. 29, 1997, at 107–08. Captain Albro P. Michell, the bar pilot on board the M/V NEUREMBERG on the day of plaintiff's alleged accident, could not recall how the ladder was secured, whether the ladder had a spreader bar, or whether stanchions were in place when he boarded the vessel. Dep. of Captain Michell, Sept. 30, 1997, at 20–22. Further, Captain Michell could not state with certainty whether there was slack in the ladder. *Id.* at 40. Captain Blancq also testified that the type of ladder used on the M/V NEUREMBERG was one that pilots always have problems with and the absence of stanchions contributed to its dangerous nature. Dep. of Captain Blancq, Sept. 29, 1997, at 110–11. Captain Michell also stated that he climbed ladders like the one on the M/V NEUREMBERG and he believes it is a "difficult" ladder to climb. Dep. of Captain Michell, Sept. 30, 1997, at 18. Hapag–Lloyd's assertions that the "defects" were open and obvious do not eliminate the vessel owner's liability under the warranty of seaworthiness. At most, such evidence goes to theories of contributory negligence. Additionally, Captain Blancq testified that it is the vessel's responsibility to inspect the Jacob's ladder and ensure its security, not the river pilot's. Dep. of Ronald Blancq, Sept. 29, 1997, at 197; Mar. 18, 1997, at 91. The evidence demonstrates that there are contested issues of material fact. As a result, this Court is obligated to deny Hapag Lloyd's motion for summary judgment.

## C. Motion to Strike the Jury

█ Hapag–Lloyd moves to strike plaintiff's demand for trial by jury on the grounds that plaintiff's claims arise under the general maritime law of the United States. General-ly, no right to trial by jury exists with respect to claims brought under federal admiralty jurisdiction. *See* Fed.R.Civ.P. 38(e). However, as noted *supra*, this case was removable to federal court only by virtue of diversity jurisdiction. Plaintiff chose to file his action in state court, taking advantage of the "savings to suitors" clause of 28 U.S.C. § 1333.[10] The Fifth Circuit has indicated that: "A plaintiff who has a state common law cause of action that also falls within the federal admiralty jurisdiction may elect to bring that suit either as an admiralty action in federal court, or as a state common law action in state court or in federal court (assuming he meets the diversity jurisdiction requirements for federal court)." *T.N.T. Marine Service, Inc. v. Weaver Shipyards & Dry Docks, Inc.,* 702 F.2d 585, 587 (5th Cir.), *cert. denied,* 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983).

█ As the plaintiff originally chose to bring this action as a non-maritime savings clause case, the action is not transformed into a maritime claim upon removal to this Court. The only basis for this Court's jurisdiction is diversity jurisdiction pursuant to 28 U.S.C. § 1332. It is clear that "[s]ince a federal court exercising its diversity jurisdiction to hear an *in personam* maritime claim is sitting as a common law court, the parties in a diversity action may assert their right to trial by jury despite the limitations associated with actions in admiralty." *Powell v. Offshore Navigation, Inc.,* 644 F.2d 1063, 1066 (5th Cir.), *cert. denied,* 454 U.S. 972, 102 S.Ct. 521, 70 L.Ed.2d 391 (1981).[11]

Plaintiff requested a trial by jury in his state court petition, and he did not make an affirmative designation for the admiralty procedures to apply.[12] Therefore, his right to a trial by jury is preserved.

---

**10.** 28 U.S.C. § 1333 states in pertinent part: "The district court shall have original jurisdiction, exclusive of the courts of the States, of any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

**11.** The Fifth Circuit could not have made it more clear:

[A] plaintiff asserting a maritime claim arising under the common law and brought in federal court by virtue of its diversity jurisdiction may indeed be tried by jury. Although the sub-

stance of the claim is generally no different from the merits of a maritime claim brought at admiralty in a federal court, a common law claim heard under the court's diversity jurisdiction is nevertheless beyond the reach of the admiralty rule restricting the right to trial by jury.

*Powell,* 644 F.2d at 1065.

**12.** Under Rule 9(h) of the Fed.R.Civ.P., "there is no right to a jury trial where the complaint contains a statement identifying the claim as an admiralty or maritime claim, even though diver-

Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that defendant's motion to strike plaintiff's demand for trial by jury is DENIED.

sity jurisdiction exists as well." *T.N.T. Marine Service, Inc.,* 702 F.2d at 587 (interpreting Rule 9(h)).